No. 80,981

NATHAN CORNELL SAMPSON, *Appellee*, v. VERONICA WINDHAM SAMPSON a/k/a VERONICA WIGGINS, *Appellant*.

(975 P.2d 1211)

Opinion filed April 16, 1999.

*Lloyd Koelker*, of Kansas City, Missouri, was on the brief for appellant.

*Gregory C. Coggs*, of Kansas City, Kansas, was on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, C.J.: This is an action by petitioner father under the Hague Convention on the Civil Aspects of International Child Abduction (Convention) against respondent mother seeking· the return of the parties' two minor children to Israel. Petitioner alleged the children had been wrongfully removed from their habitual residence. The district court granted the petition, finding that Israel was the appropriate forum state for determination of the custody issues, and ordered that respondent submit herself and the children, personally, to the Israeli courts within 90 days. Respondent appeals therefrom.

## THE HAGUE CONVENTION AND ICARA

As this is the first time the Convention and the federal act governing its enforcement have been before this court, it is necessary to discuss them before proceeding further. The Convention was established at The Hague on October 25, 1980 . The United States ratified the Convention on April 29, 1988, and became a "Contracting State" effective July 1, 1988. Executive Order No. 12648, 53 Fed. Reg. 30637 (1988). Also on April 29, 1988, Congress enacted the International Child Abduction Remedies Act (ICARA), 42 U.S.C. § 11601 *et seq.* (1994), to implement the Convention in the United States. See 51 Fed. Reg. 10494-10516 (1986) (setting out full text of the Convention and U.S. State Department's legal analysis of the Convention).

Israel is a Contracting State to the Convention. See U.S. State Department Home Page at http://travel.state.gov/hague_list.html; Silberman, *Hague Convention on International Child Abduction: A Brief Overview and Case Law Analysis*, 28 Fam. L.Q. 9, n.2 (1994) (hereinafter Silberman); *Toren v. Toren*, 26 F. Supp. 2d 240, 242 (D. Mass. 1998).

Article 6 of the Convention imposes an obligation on Contracting States to designate a "Central Authority" for the purpose of discharging certain specified functions under the Convention. 51 Fed. Reg. at 10498. By executive order, the President designated the

Department of State as that Central Authority in the United States. 53 Fed. Reg. at 30637.

Under ICARA, the federal and state courts are given concurrent original jurisdiction of actions arising under the Convention. 42 U.S.C. § 11603(a).

In enacting ICARA, Congress made the following findings:

"(1) The international abduction or wrongful retention of children is harmful to their well-being.

"(2) Persons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention.

"(3) International abductions and retentions of children are increasing, and only concerted cooperation pursuant to an international agreement can effectively combat this problem.

"(4) The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980, establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained, as well as for securing the exercise of visitation rights. Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies. The Convention provides a sound treaty framework to help resolve the problem of international abduction and retention of children and will deter such wrongful removals and retentions." 42 U.S.C. § 11601(a).

Further, ICARA declares that the Convention and its implementation "empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." 42 U.S.C. § 11601(b)(4). Similarly, the Convention states: "A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue." Convention, Art. 19; 51 Fed. Reg. at 10500.

The Convention has two objectives:

"a to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

"b to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Convention, Art. 1; 51 Fed. Reg. at 10498.

Initially, it must be shown that the child was removed from its habitual residence under the Convention. The term "habitual res-

idence" is not defined in the Convention. Nonetheless, courts considering this question have determined a child's habitual residence based on the peculiar facts and circumstances of each case. The court in *Toren v. Toren*, 26 F. Supp. at 243, indicated that some consensus has been reached on general principles surrounding the term's definition. Habitual residence is not a technical term like domicile; it should be understood as being the child's "ordinary residence" at the relevant time; in determining the child's habitual residence, the court should focus on the child, not the parents, and examine the past, not future intentions; and, for a particular residence to be considered habitual, there must be a degree of "settled purpose."

Therefore, in actions filed under the Convention and ICARA, the court's role is to ascertain which Contracting State has jurisdiction to determine the custody rights of children who have been wrongfully removed. *Levesque v. Levesque*, 816 F. Supp. 662, 664, (D. Kan. 1993). See also Silberman, 28 Fam. L.Q. at 10 (most striking feature of the Convention is its procedural and jurisdictional focus). As the Sixth Circuit Court of Appeals pointed out in *Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir. 1993),

"[i]t is important to understand that 'wrongful removal' is a legal term strictly defined in the Convention. It does not require an ad hoc determination or a balancing of the equities. Such action by a court would be contrary to a primary purpose of the Convention: to preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic court."

Under the Convention, the removal of a child is considered wrongful when

"*a* it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

"*b* at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

"The rights of custody mentioned in sub-paragraph *a* above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State." Convention, Art. 3; 51 Fed. Reg. at 10498.

If it is determined the child has been removed from its habitual residence, the petitioner parent must show by a preponderance of the evidence that the removal was wrongful. 42 U.S.C. § 11603(e)(1)(A). That is, the evidence must show he or she was exercising lawful custody rights over the child at the time of removal. This question must be determined under the law of the child's habitual residence. Convention, Art 3(a); 51 Fed. Reg. at 10498; *Freier v. Freier*, 969 F. Supp 436, 441 (E.D. Mich. 1996). Under ICARA and the Convention, "wrongful removal" may be found irrespective of whether the children are the subject of a custody order. 42 U.S.C. § 11603(f)(2).

If the petitioner establishes a wrongful removal, the burden shifts to the respondent to show by clear and convincing evidence that an exception to the Convention exists, *e.g.*, that the return of the child would expose the child to physical or psychological harm or that the return of the child would not be permitted under fundamental principles relating to the protection of human rights and fundamental freedoms. 42 U.S.C. § 11603(e)(2)(A). The respondent may also raise and prove by a preponderance of the evidence that the proceeding commenced more than one year after the child's removal and the child has become settled in his or her new environment, or that the petitioner was not actually exercising the custody right at the time of the removal or retention or had consented to or subsequently acquiesced in the removal or retention. 42 U.S.C. § 11603(e)(2)(B).

## FACTUAL BACKGROUND

We turn now to the facts in the case before us. The following facts are uncontroverted. Both parties are American citizens. They were married in 1989 in Israel according to the practices of the African Hebrew Israelite religious community in which they both lived. Two children, Yemlah and Kivodah, age 8 and 3, respectively, at the time of the hearing, were born in Israel to the marriage. Respondent mother moved back to the United States in October 1996. The children remained with respondent's mother in Israel where they were financially supported solely by petitioner father who visited them on weekends. Respondent's mother testified she

believed she was looking after the children on behalf of both of their parents.

In May 1997, respondent returned to Israel. While ostensibly just visiting, respondent removed both children and took them to the United States without any disclosure to petitioner or the grandmother as to her intention to do so and without petitioner's consent.

The parties were divorced in either October 1995 or March 1996 under conflicting testimony of the parties. Both parties submitted exhibits to the court relative to the divorce, but none are in the record before us. Petitioner testified the Bill of Divorce stated he was to "retain custody of the children."

## DISTRICT COURT'S FINDINGS AND CONCLUSIONS

The district court found and concluded as follows:

"1. That the two children who are the subject matter of this dispute were born in the State of Israel and lived there from birth until May, 1997, when taken from Israel to the United States by their Mother, the Respondent.

"2. That there was a religious divorce granted in the State of Israel which gave custody of the minor children to the Father, Petitioner, Nathan C. Sampson.

"3. That pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, of which the United States of America is a signatory, the appropriate forum State for disposition of the issue of custody of the subject children is the State of Israel.

"IT IS THEREFORE BY THE COURT ORDERED, ADJUDGED, AND DECREED as follows:

"1. That temporary custody of the two minor children, Yemlah and Kivodah, will remain with Respondent.

"2. That Respondent submit herself in person and the aforementioned minor children, in their persons, to the Courts within the State of Israel within ninety (90) days of this hearing.

"3. That should Respondent not submit herself and the children to the courts in Israel within the aforementioned ninety (90) days, a Custody Order will issue to return the children to the Petitioner, natural father, Nathan Cornell Sampson.

"4. That judgment in the amount of Seven Thousand Eight Hundred and Thirty Dollars ($7,830) is granted to Petitioner against Respondent for expenses incurred to date.

"5. That costs are taxed against Respondent.

"6. That Petitioner is granted visitation with the children; same is ordered arranged through Court Services."

In denying respondent's motion for rehearing, the district judge stated:

"Well, Mr. Koelker [respondent's counsel], I appreciate your arguments of the things that you have presented to the Court by way of your brief. But once again, we come down to the fact that these children were born in Israel, that there was a marriage under a—a religious marriage in Israel and a religious divorce in Israel. I'm not an expert on Israeli religious or civil law but it seems to me under the Hague Convention that that's the appropriate forum to determine the rights of these parties.

"You know, your argument that that's the only way she could take the kids out of the country to me is an argument in favor of the Hague Convention. That's what that Convention was designed to prevent, persons acting unilaterally to remove their children from a court of competent jurisdiction where the children were born and raised, the court that knows the most about them and that has their interests closest at heart.

"So your motion in rehearing is that, it's denied. And that the previous orders entered by the Court remain in effect."

## STANDARD OF REVIEW

Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993).

## DISCUSSION

It is uncontroverted that the children were born in Israel and continually resided there until their removal by respondent. Clearly respondent removed the children from their habitual residence under the Convention, and she does not contend otherwise.

This brings us to the propriety of the district court's determination that the removal was wrongful as violative of petitioner's rights of custody.

The district court found the divorce gave custody of the children to petitioner. This was supported by petitioner's testimony and a

copy of the divorce decree which he testified provided he was to "retain" custody.

Respondent argues that no custody order was entered. This court is unable to evaluate documents considered by the district court when they are not included in the record on appeal. Respondent had the burden to designate a record sufficient to establish the claimed error. She has not done so. Thus, her claim of alleged error on this point must fail. See *McCubbin v. Walker*, 256 Kan. 276, 295, 886 P.2d 790 (1994). As previously noted, an actual custody order is not a requirement under the Convention and ICARA for a finding of wrongful removal. 42 U.S.C. § 11603(f)(2).

We also note that it is undisputed that respondent returned to Israel and secretly spirited the children out of the country without telling her mother or petitioner, their father. We believe that respondent's conduct in this respect lends support to petitioner's position that he had rights of custody and that respondent knew as much. Had that not been the case, petitioner need not have clandestinely left Israel with the children.

Therefore, we find that petitioner has met his burden of proving by a preponderance of the evidence that the children habitually resided in Israel and that petitioner had rights of custody at the time the children were removed from their habitual residence. Substantial evidence supports the district court's relevant findings and conclusions.

Once petitioner has met his burden of proof on the question of wrongful removal, the burden shifts to the respondent to show by a preponderance of the evidence that certain exceptions to the Convention exist. See 42 U.S.C. § 11603(e)(2)(B). Here, respondent contends that petitioner was not actually exercising his rights of custody. Specifically, she asserts that petitioner did not exercise the right to determine the children's place of residence, that the children had never resided exclusively with him, that petitioner lived several hours away and only visited the children on weekends, and that it was respondent's mother who cared for the children when she was abroad, not petitioner.

All of the exceptions to the Convention that allow courts to deny return of children are intended to be construed and applied very

narrowly to effectuate the objectives of the Convention. 51 Fed. Reg. at 10509-10. See *Levesque v. Levesque*, at 667; Silberman, 28 Fam. L.Q. at 25-26.

In applying the "failure to exercise" defense, the *Freier* court noted that enforcement of the Convention should not be made dependent on the creation of a common-law definition of "exercise." The only acceptable solution, in the absence of a ruling from a court in the country of habitual residence, is to liberally find "exercise" whenever a parent with de jure custody rights keeps, or seeks to keep, any sort of regular contact with his or her child. 969 F. Supp. at 441 (relying on *Friedrich v. Friedrich*, 78 F.3d 1060 [6th Cir. 1996]). Based on these tenets, *Freier* held that

"if a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to 'exercise' those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child. Once it determines that the parent exercised custody rights in any manner, the court should stop—completely avoiding the question whether the parent exercised the custody rights well or badly. These matters go to the merits of the custody dispute and are, therefore, beyond the subject matter jurisdiction of the federal courts. 42 U.S.C. § 11601(b)(4)." 969 F. Supp. at 441.

In *Freier*, the petitioner was the child's natural father, the parents and children had all lived together continuously in Israel, the petitioner had requested return of the child via telephone and by filing a petition with the court, and the petitioner had requested visitation with the child in the United States. The court concluded from these facts that the petitioner had not abandoned the child, had not had his parental rights judicially terminated, and had not consented to the removal and retention of his child. As such, the petitioner met his burden of showing that the child was wrongfully removed from her place of habitual residence and that he had and continued to exercise his custody rights over her. 969 F. Supp. at 441-42.

In this case, it is uncontroverted that petitioner regularly visited with the two children during the time respondent lived with the children, as well as while respondent was in the United States without them. Petitioner and the children's grandmother (respondent's mother) both testified that petitioner financially supported the chil-

dren while their mother was abroad. There was no testimony that respondent sent money back to Israel for their support. Additionally, petitioner requested the return of the children by petitioning the district court in Kansas and by requesting help from the Central Authority in Israel. Petitioner also requested and was granted visitation with the children during the pendency of the current proceedings. This evidence, like the evidence in *Freier*, is sufficient to support the district court's conclusion that petitioner was exercising his rights of custody. Respondent has failed to meet her burden of proof on this point.

We therefore hold that, under the Convention, the children habitually resided in Israel; that petitioner had rights of custody; and, that petitioner was exercising those rights at the time the children were removed. As such, the district court was correct in concluding that respondent wrongfully removed the children from Israel, and that respondent must return the children to Israel for further proceedings.

Finally, we reiterate here that our conclusion does not, nor should it, speak to the merits of either petitioner's or respondent's claims to custody. This court's determination merely indicates that custody should be determined in Israel under Israeli law.

The judgment of the district court is affirmed.