(32 P.3d 1197)
No. 85,788

THE CIT GROUP/SALES FINANCING, INC., *Appellee/Cross-Appellant*, v. E-Z PAY USED CARS, INC., d/b/a NORTHTOWN TRUCK AND AUTO, AND PAUL K. COLYER, *Appellants/Cross-Appellees*.

Opinion filed August 24, 2001.

*Stephen P. Weir*, of Hein and Weir, Chartered, of Topeka, for appellants/cross-appellees.

*Marc E. Elkins* and *Michael J. Jerde*, of Morrison & Hecker L.L.P., of Kansas City, Missouri, for appellee/cross-appellant.

Before RULON, C.J., PIERRON, J., and PATRICK D. MCANANY, District Judge, assigned.

RULON, C.J.: Defendants E-Z Pay Used Cars, Inc., (E-Z Pay) and Paul K. Colyer appeal the district court's judgment, adjudicating default on contractual obligations relating to inventory financing of E-Z Pay's vehicle dealerships. The defendants claim the court erred in interpreting the contract, in refusing to admit evidence favorable to the defendant, in refusing to permit a claim for punitive damages, and in denying defendant Colyer's personal claim under the Kansas Consumer Protection Act (KCPA).

Plaintiff CIT Group/Sales Financing, Inc., (CIT) cross-appeals, claiming the district court improperly considered the terms of the sales presentation and the approval letter in defining the contractual obligations of the parties.

We affirm.

A detailed discussion of the underlying facts is not necessary to our resolution of the presented issues.

## Contractual Obligations

Primarily, this case centers upon the contractual obligations of the parties under the "Floorplan Financing and Security Agreement" entered on December 10, 1997. Interpretation of a contract is a question of law over which this court has unlimited review. See *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 152-53, 959 P.2d 894 (1998).

Under the explicit terms of the contract, CIT was essentially given complete discretion in determining the amount of credit to extend under the floor plan agreement and in determining whether to extend credit at all. In return, the contract obligated E-Z Pay to provide CIT with a security interest in all collateral, whether existing or acquired in the future, including proceeds, accounts, contracts, insurance, chattel paper, instruments, documents of title, returns and repossessions, etc. E-Z Pay additionally promised CIT a power of attorney to execute notes, chattel paper, and financing statements related to E-Z Pay's obligations to CIT, with the power to amend such documents improperly drafted by E-Z Pay.

E-Z Pay further agreed to hold its goods and proceeds from sales in trust for CIT to ensure that CIT's rights in such collateral were not impaired, paying all taxes, fees, and assessments on such collateral and proceeds and carrying all risk of liability and loss. In doing so, E-Z Pay warranted the collateral would be free from encumbrances and security interests, except for interests of inventory financers.

Furthermore, E-Z Pay agreed to notify CIT of a sale of a secured unit and immediately pay the amount of debt attributable to that unit, as well as insuring the collateral against damage or theft and several other obligations. The contract further contains a choice of laws provision, applying New Jersey law to the interpretation and performance of the contract.

Based upon a strict interpretation of the contract, E-Z Pay bears all of the contractual obligations, CIT none. Hornbook law provides that a contract which purports to promise a specified performance

but allows one party the discretion to determine whether to perform is only an illusory contract and unenforceable. See, *e.g., Flight Concepts Ltd. Partnership v. Boeing Co.*, 819 F. Supp. 1535, 1553 (D. Kan. 1993), *aff'd* 38 F.3d 1152 (10th Cir. 1994) (Consideration is essential to a valid contract while mutuality of obligation is not unless the want of mutuality would leave one party without a valid or available consideration for his promise.); *Bryant v. City of Atlantic City*, 309 N.J. Super. 596, 620-21, 707 A.2d 1072 (1998) (adopting the Restatement [Second] of Contracts § 2, comment e (1979) definition of illusory contract). Consequently, if the contract arguably provided CIT the sole discretion to determine whether to extend credit and how much to extend, there was no enforceable contract between the parties.

However, courts must endeavor to sustain a fairly executed agreement between parties whenever possible, rather than seeking to defeat the parties' intent by applying technical legal rules. See *Weber v. Tillman*, 259 Kan. 457, 463, 913 P.2d 84 (1996).

In order to enforce a contract, some courts have imposed a duty of good faith upon the exercise of discretion in performing the contract obligations. See, *e.g., Bryant*, N.J. Super. at 621 ("[T]he contingencies in the Redeveloper's Agreement which plaintiffs assert make it illusory do not give MRI the unfettered discretion to terminate. This contingency now carries with it the court imposed 'good faith' requirement, such that MRI can terminate the agreement, based on the contingency of Section 4.3, only if the costs of remediation are objectively determined to be too high.").

In *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1154 (D.C. Cir. 1984), the court, in part, said:

"Here, however, appellant does not rely solely upon the express conferral of a power to alter quotas, but also upon the expansive fashion in which that power is contractually described. The Compensation Plan states and reiterates that Tymshare may change the quota plan 'within [its] sole discretion,' [citation omitted]. But as the administrative law concept of 'abuse of discretion' suggest[s], [citation omitted], this phrase is not necessarily the equivalent of 'for any reason whatsoever, no matter how arbitrary or unreasonable.' . . . . It seems to us that the 'sole discretion' intended was discretion to determine the existence or nonexistence of the various factors that would reasonably justify alteration of the sales quota. . . .

The company's genuine determination that one or another of these factors exists can presumably not be questioned."

Here, the financing contract implied an obligation for CIT to exercise its discretion in lending money in good faith. The district court, in the present case, was persuaded by Barkley Clark's definition of "good faith" within the context of the Uniform Commercial Code (UCC), applying a subjective standard in determining whether a party operated in good faith. Our Supreme Court has held that a lender's relationship with a borrower is analyzed under a subjective standard of good faith, requiring merely honesty in fact. See *Daniels v. Army National Bank*, 249 Kan. 654, 658, 822 P.2d 39 (1991).

However, the imposition of a subjective standard of good faith does not imply that a party with discretion in the execution of its contractual obligations can escape liability by simply stating that it believed it was acting in good faith. Discretion must be applied honestly, which requires an objective determination of the motives governing the exercise of discretion. See *Bryant*, 309 N.J. Super. at 621; *Tymshare, Inc.*, 727 F.2d at 1154.

" 'Good faith limits the exercise of discretion in performance conferred on one party by the contract. When a discretion-exercising party may determine aspects of the contract, such as quantity, price, or time, it controls the other's anticipated benefits. Such a party may deprive the other of these anticipated benefits for a legitimate (or good faith) reason. The same act will be a breach of the contract if undertaken for an illegitimate (or bad faith) reason.' " *Meier's Trucking Co. v. United Constr. Co.*, 237 Kan. 692, 701, 704 P.2d 2 (1985) (Holmes, J., dissenting) (quoting Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv. L. Rev. 369, 372-73 [1980]).

Determining good faith inherently involves a question of fact regarding the reasonable expectations of the parties at the time of contract formation and the subsequent determination that the deprivation of the expected performance by the party wielding discretion is based upon an honest belief that circumstances provided an exception to performance that was within the reasonable contemplation of the parties. What constitutes a circumstance within the reasonable expectations or contemplation of the parties is an objective determination. The question of whether the parties believed

that such a circumstance existed is a subjective determination. 94 Harv. L. Rev. at 390-91; see also *St. Catherine Hospital of Garden City v. Rodriguez*, 25 Kan. App. 2d 763, 765, 971 P.2d 754 (1998) ("We agree that whether the good faith standard was met is a question of fact.").

"Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved." *Sampson v. Sampson*, 267 Kan. 175, 181, 975 P.2d 1211 (1999).

Here, the district court determined the reasonable expectations of the parties contemplated financing for new, used, and rental vehicles to the credit limits proposed and approved in the sales presentation and conditional letter of approval. Based upon testimony from witnesses for both CIT and E-Z Pay, indicating that negotiations for the contract provided specific credit levels for new, used, and rental vehicles, which was not specifically disputed, the record provides substantial competent evidence for the district court's determination of the contract expectations of the parties.

Importantly, the district court found that the floor plan agreement did not provide E-Z Pay with an absolute right to expect the lower limits provided in the sales presentation and the conditional approval letter, because the terms of the financing agreement allowed CIT to exercise its discretion in extending credit to E-Z Pay. Because the terms of a final contract control the intent of the parties over evidence demonstrating a conflicting intent, the financing agreement stands as substantial competent evidence to support the district court's finding that CIT was justified in failing to provide financing as the exercise of its discretion dictated.

Ultimately, the district court found that CIT had exercised its discretion in good faith by refusing to advance credit against E-Z Pay's used vehicle inventory. Clearly, CIT was not required to extend credit to a borrower who was in default on its existing debt. Furthermore, CIT was not required to extend credit upon collateral to which CIT did not have first priority.

In finding that CIT had exercised its discretion in good faith, the district court relied upon evidence that NationsCredit possessed a prior general security interest over E-Z Pay's collateral. Although CIT's purchase money secured creditor status protected its advances to purchase inventory, CIT's status as to trade-in vehicles obtained as proceeds from the sale of new vehicles was that of a general secured creditor. See K.S.A. 84-9-312(3) and Official UCC Comments §§ 3 & 8; N.J. Stat. Ann. § 12A: 9-312(3) (West 2001 Supp.).

We conclude CIT's refusal to extend credit based on E-Z Pay's used vehicles as collateral, while NationsCredit retained a prior general security interest in the used vehicles, was justified. To obtain priority over NationsCredit's security interest, CIT could have bought NationsCredit's interest in the collateral by paying E-Z Pay's debt to NationsCredit. Clearly, CIT did exercise this option with respect to identifiable collateral on E-Z Pay's lots.

As we understand, CIT claims that some of the debt owed by E-Z Pay to NationsCredit involved units that were not found within E-Z Pay's inventory. E-Z Pay produced no evidence to dispute this claim. As a result, any debt transferred from NationsCredit to CIT as a result of CIT's purchase of NationsCredit's interest in such units would be uncollateralized debt. CIT did not breach a duty of good faith when refusing to extend credit under such conditions.

Alternatively, CIT could have sought to obtain a subordination agreement from NationsCredit, granting CIT priority over any collateral in the event E-Z Pay defaulted on its debt obligations. This option was attempted by CIT on several occasions, as indicated by the facsimile documents sent to NationsCredit. NationsCredit, however, refused to execute a subordination agreement because its interest in E-Z Pay's collateral would then be diminished. The fact that NationsCredit did not wish to lose its position with regard to E-Z Pay's collateral does not indicate a lack of good faith by CIT.

An appellate court reviews the record for substantial competent evidence to support a district court's factual findings; we do not reweigh the evidence or determine the credibility of the witnesses. See *Sampson*, 267 Kan. at 181; *Garvey Elevators, Inc. v. Kansas*

*Human Rights Comm'n*, 265 Kan. 484, 496-97, 961 P.2d 696 (1998).

We firmly conclude this record provides substantial competent evidence to support the district court's finding that CIT did not breach its duty of good faith when refusing to extend credit against E-Z Pay's used vehicles.

## Refusal to Admit Evidence

E-Z Pay claims the district court erred when refusing to allow a defense witness, Steven Bonner, to testify by telephone or to admit the deposition transcript of that witness. In reviewing a district court's decision to exclude evidence, an appellate court reviews the record for an abuse of the district court's discretion. See *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999).

E-Z Pay argues that all relevant evidence is admissible and that Bonner's testimony was highly relevant to the breach of contract issue. See 60-407(f). However, the admission of relevant evidence is subject to statutory, constitutional, or judicial exclusionary rules. *Divine v. Groshong*, 235 Kan. 127, 130, 679 P.2d 700 (1984) (citing 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-407, Advisory Committee Notes to Laws of 1963 p.75 [1979]).

K.S.A. 60-460 prohibits the admission of out-of-court statements offered to prove the truth of the matter stated, unless the statements fall within a specific exception. One of those exceptions is an affidavit, the use of which is specifically provided for by statute. K.S.A. 60-460(b). E-Z Pay does not cite, nor does extensive statutory research provide, a statute permitting a party to replace a witness' trial testimony as to a material issue with an affidavit.

Here, the statements within the proffered affidavit by E-Z Pay were designed to demonstrate CIT's intent to completely buy out NationsCredit and to demonstrate that CIT poorly managed the E-Z Pay account, causing the accounting problems leading to E-Z Pay's default. As such, the statements within the affidavit clearly were intended to be taken for the truth of the matters asserted. Hence, the statements were inadmissible hearsay.

Even if E-Z Pay had sufficiently demonstrated Bonner's unavailability, the statutory exception from hearsay cited by E-Z Pay

does not encompass affidavits but only depositions and prior testimony where the declarant was subject to cross-examination by a party with a similar interest and motive to that of the current party against whom the deposition or prior testimony is sought to be used. K.S.A. 60-460(c)(2)(B). An affidavit does not meet the requirements of this provision.

Under the circumstances, the district court did not abuse its discretion in refusing to admit Bonner's affidavit.

## The Punitive Damages Claim

Defendants next challenge the district court's refusal to permit an amendment of the cross-complaint for punitive damages. Generally, an appellate court reviews a district court's decision regarding a motion for punitive damages for an abuse of discretion. See *Lindsey v. Miami County National Bank*, 267 Kan. 685, 689, 984 P.2d 719 (1999).

Here, the district court dismissed E-Z Pay's claim for punitive damages on two grounds. First, the court determined that, other than defendant Colyer's personal claims for defamation, the action arose solely out of an alleged breach of a contractual relationship, which does not support a claim for punitive damages. In addition, the court determined that E-Z Pay was unlikely to prove by clear and convincing evidence that CIT's actions were willful, wanton, fraudulent, or malicious.

In Kansas, punitive damages are not permitted for an action for breach of contract, standing alone. *Farrell v. General Motors Corp.*, 249 Kan. 231, 247, 815 P.2d 538 (1991). Because this case was adjudicated solely upon a theory of breach of contract, the district court did not err in denying the defendants' motion to amend their counterclaim to add punitive damages.

E-Z Pay does not raise the district court's dismissal of its tort claims on this appeal, although mention of tortious conduct is made in its arguments on other issues. An issue not briefed, or incidently mentioned but not argued, is deemed abandoned on appeal. *Bergstrom v. Noah*, 266 Kan. 847, 873, 974 P.2d 531 (1999); *McKissick v. Frye*, 255 Kan. 566, 578, 876 P.2d 1371 (1994).

## The KCPA Claim

Finally, E-Z Pay argues the district court erred in dismissing the Kansas Consumers Protection Act (KCPA) claim against CIT due to the fact that defendant Colyer's guarantee of performance under the contract was as an individual. This issue involves an interpretation of the KCPA, which is a question of law. The court's review is plenary. *Rose & Nelson v. Frank*, 25 Kan. App. 2d 22, 24, 956 P.2d 729, *rev. denied* 265 Kan. 886 (1998).

According to K.S.A. 50-623(b), the KCPA is intended, in part, "to protect consumers from suppliers who commit deceptive and unconscionable practices." "Consumer" is defined as "an individual or sole proprietor who seeks or acquires property or services for personal, family, household, business or agricultural purposes." K.S.A. 50-624(b).

In *First Nat'l Bank of Anthony v. Dunning*, 18 Kan. App. 2d 518, 524, 855 P.2d 493, *rev. denied* 253 Kan. 857 (1993), this court held that a gratuitous surety, who was supplying collateral for a business loan, was not a consumer within the meaning of the KCPA.

The KCPA's protection is limited to individuals and sole proprietors who directly contract with suppliers for goods or services, and is not extended to individuals who promise performance of a corporation contracting with a supplier.

We conclude the district court did not err in holding the provisions of the KCPA inapplicable to defendant Colyer or to defendant E-Z Pay.

## The Cross-Appeal

On cross-appeal, CIT argues the district court erred by admitting the sales presentation and letter of conditional approval to demonstrate the parties' contract intent, in violation of the parol evidence rule.

Because we affirm the district court's decision, this question is moot. See *Shanks v. Nelson*, 258 Kan. 688, Syl. ¶¶ 1, 2, 3, 907 P.2d 882 (1995). However, were this court to address the issue, the analysis found elsewhere in this opinion resolves this question as well. Evidence that is not *inconsistent* with the final articulation

of the parties' contractual intent does not violate the parol evidence rule. See *Hall v. Mullen*, 234 Kan. 1031, 1037, 678 P.2d 169 (1984) (where parol evidence was not in conflict with the provisions of a quitclaim deed, it is held that evidence was properly considered to interpret the effect of the quitclaim deed). As a result the district court did not abuse its discretion in admitting the sales presentation and the letter of conditional approval.

Affirmed.