NOT DESIGNATED FOR PUBLICATION

No. 123,027

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAN MARTINEZ,
*Appellant*,

v.

HOBBS MECHANICAL, INC, HARVEY MILLER, and DIANNE MILLER,
*Appellees*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SEAN M.A. HATFIELD, judge. Opinion filed August 6, 2021. Reversed and remanded with directions.

*Dan Martinez*, appellant pro se.

*Carl N. Kelly*, of Kelly Law Offices, of Wellington, for appellees.

Before WARNER, P.J., BUSER and CLINE, JJ.

PER CURIAM:  Dan Martinez appeals the summary judgment disposition of his Kansas Consumer Protection Act (KCPA) claims. The district court found Martinez had no right to relief under the KCPA because it interpreted the KCPA to require an actual exchange of services or property for value. Because we disagree with the district court's restrictive interpretation of the KCPA, we reverse and remand for further proceedings.

1

FACTS

In the spring of 2018, Martinez wanted to convert an open, wood-burning fireplace into a closed, gas-burning fireplace. He researched products online and decided he wanted a Mendota fireplace insert installed. The Mendota website stated the manufacturer's warranty for the insert was valid only if an authorized dealer and installer sold and installed the product. The website also listed Hobbs Mechanical, Inc. in Wellington, Kansas, as an authorized dealer. Hobbs Mechanical was owned by Harvey and Dianne Miller, who were husband and wife.

Martinez called Hobbs Mechanical and spoke with Dianne. He explained that his house had an existing concrete or stone fireplace that would require modification for a gas-burning insert. According to Martinez, he told Dianne he wanted Hobbs Mechanical to perform the installation "with everything that goes with it," and they discussed installing a Mendota 47 or 49 model.

Martinez claimed Dianne agreed to sell and install a fireplace at a cost of "$10,000 plus." He noted Dianne assured him that she was a certified fireplace installer, Hobbs Mechanical could perform the installation, and Hobbs Mechanical was an authorized dealer for Mendota products. Martinez said Dianne outlined the scope of work her company would perform, which included a description of the equipment and an estimated date of completion. Martinez claimed he relied on Dianne's assertions that Hobbs Mechanical could perform the installation. Dianne denied the bulk of Martinez' assertions.

Martinez admitted he did not know whether the Mendota fireplace inserts he discussed with Dianne would fit in the existing fireplace. Dianne said she knew the inserts they discussed would not work in the existing fireplace as described by Martinez. She claimed she scheduled an appointment to examine the fireplace to see what would

2

work. She denied she would have promised to install a fireplace insert without first examining the existing space and claimed Hobbs Mechanical would have engaged another company to perform the installation.

About a week later, Harvey drove to Martinez' house to examine the existing fireplace. Harvey took measurements of Martinez' fireplace. Based on his measurements, Harvey told Martinez the fireplace would need modification to accommodate a Mendota fireplace insert. Martinez claimed Harvey told him that Harvey had an employee who could perform the necessary modifications. Harvey claimed he told Martinez only that he knew of someone who could perform the modifications.

Harvey then called Tracy French to discuss the job. French contacted Martinez, telling him Harvey had asked French to arrange a visit to inspect the fireplace for modification. At some point, French inspected the fireplace and Martinez engaged him to make the required modifications for the fireplace insert. The Millers both admitted that Harvey referred French for modifications to Martinez' fireplace but denied that French was an employee of Hobbs Mechanical.

While French was working on the fireplace modifications, French determined the Mendota model 49 would not fit in the existing fireplace structure, but the Mendota model 47 might. French discussed his conclusion with Harvey by telephone and then on site.

While Harvey was on site, Martinez asked him about French's statement that Harvey would require a down payment before ordering the insert. Harvey explained that the company required a down payment on special orders because, if the customer changed his or her opinion about the order before installation, the company was stuck with return charges. Martinez told Harvey that he had no intention of changing his mind and offered to pay the down payment or even the entire purchase price. Harvey told

Martinez to talk to Dianne. Martinez said he emphasized his desire to push forward with the project to get it completed.

Either on this visit or on another visit, Harvey inspected the work French had performed on the fireplace modifications and told Martinez, "[D]id I pick the right guy or what?" At some unspecified time, Harvey also purportedly told Martinez that installation of the fireplace insert should be completed within two days after receiving the unit. Harvey expected to receive the unit in a couple of weeks.

About the same time as Martinez spoke to Harvey about a down payment, Dianne purportedly called Martinez at home. In this conversation, Dianne allegedly asked Martinez for a down payment on the fireplace insert. Martinez says he told Dianne that he would pay the entire purchase price up front because he did not want any delays in the installation. When Dianne told him that she did not know the precise figure yet, Martinez claimed he offered to pay $10,000 and have Hobbs Mechanical bill him for the rest. Although Martinez offered to put a check in the mail, he admitted that he never paid Hobbs Mechanical any money.

Dianne allegedly asked what type of tile Martinez wanted, and Martinez told her he wanted his fireplace to look like the picture on the Mendota website. According to Martinez, Dianne told him that she would call him back in a couple of days with the price total. When Martinez asked whether she wanted a $10,000 down payment, he said Dianne told him to wait until she provided the total.

When five days passed without hearing from Dianne, Martinez called Hobbs Mechanical to speak with her. He said she told him Hobbs Mechanical had given priority to air conditioning jobs because it was summer, and those customers had greater need. Dianne supposedly told Martinez that she would need to speak with Harvey, and she would call Martinez back after she spoke to Harvey.

Several days later, Martinez called Hobbs Mechanical and spoke with Dianne. She reported that she had spoken with Harvey, and he told her about an issue with the fans on the fireplace insert. Dianne told Martinez that she needed to speak with French before providing Martinez with a price quote.

At some point, Martinez called back to see if the fan issue had been resolved. Dianne reported that she had spoken to French but had not talked with Harvey after receiving the information from French.

After more time passed, Martinez again called Hobbs Mechanical and spoke with an office assistant. Martinez left a message for Dianne to call him back, expressing frustration that his fireplace had been torn apart without the installation progressing.

After several more days passed without receiving any communication from Dianne or anyone else at Hobbs Mechanical, Martinez concluded Hobbs Mechanical was never going to complete the project. He obtained an attorney and filed his first petition. Martinez later dismissed the suit without prejudice, wanting to represent himself.

Martinez refiled his petition against Hobbs Mechanical, Inc., Dianne, and Harvey, and French, individually, requesting declaratory and injunctive relief, damages, and attorney fees for violating the KCPA. French answered the petition separately from the other defendants. Martinez amended his petition twice more, each time generally seeking relief from alleged violations of the KCPA. Though Martinez' claims are a bit difficult to discern, he seems to allege the following violations of the KCPA by Hobbs Mechanical, Inc.:  (1) false statements regarding licensure to perform the work; (2) false statements regarding French's qualifications to perform the fireplace modifications; (3) failure to obtain a city permit for the modifications; (4) concealing or misleading Martinez regarding the fact that Hobbs Mechanical, Inc. was only licensed to sell Mendota gas fireplaces but not to install them; (5) concealing or misleading Martinez regarding Hobbs

5

Mechanical, Inc.'s expertise in modifying stone and brick fireplaces; (6) representing that French was an employee or agent of Hobbs Mechanical, Inc.; and (7) inducing Martinez to undergo fireplace modifications at a time when Hobbs Mechanical, Inc. had no intentions of installing a fireplace at Martinez' residence. At some point, Martinez reached a settlement agreement with French, who was then dismissed from the suit with prejudice.

Martinez and the remaining defendants filed competing motions for summary judgment. After engaging in a valiant effort to parse through the parties' pleadings (which were difficult to follow on Martinez' side and in violation of Kansas Supreme Court Rule 141 [2021 Kan. S. Ct. R. 220] on the defendants' side), the district court ultimately denied Martinez' motion and granted the defendants' motion on Martinez' KCPA claims. The district court denied the defendants' motion on their counterclaims.

The linchpin of the district court's decision on the KCPA claims was its conclusion that liability under the KCPA requires an actual exchange of services or property for value because the Act defines "consumer transaction" as "a sale, lease, assignment or other disposition for value of property or services within this state . . . to a consumer." K.S.A. 2020 Supp. 50-624(c). The court found no facts that would support such an exchange between Martinez and Hobbs Mechanical. At best, the court found only a standalone oral proposal or quote with no payment by Martinez or work by Hobbs Mechanical. The court did not attribute French's work to Hobbs Mechanical because no evidence showed French was an employee, assign, or representative of Hobbs Mechanical.

On appeal, Martinez challenges the district court's interpretation of the KCPA to require an actual exchange of services or property for value to trigger the Act's protections. While he also reasserts other arguments from his motion for summary judgment, those issues are not properly before us. Once the district court made its

threshold determination that Martinez could not recover under the KCPA because the parties did not exchange value for property or services, it understandably did not consider whether the defendants committed deceptive and unconscionable acts or practices. Because we find the district court erred in requiring an actual exchange of value for property or services to recover under the KCPA, we reverse the district court's summary judgment decision on that basis alone and remand Martinez' KCPA claims for further proceedings. We make no determination of the merits of Martinez' KCPA claims.

ANALYSIS

In evaluating a motion for summary judgment, a court must resolve all facts and reasonable inferences in favor of the party against whom summary judgment is sought. A party opposing summary judgment must come forward with evidence establishing a genuine dispute about a material fact on a conclusive issue in the case. If reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Because an appellate court is in the same position as the district court to evaluate a motion for summary judgment, appellate review of summary judgment is de novo. *Hammond v. San Lo Leyte VFW Post #7515*, 311 Kan. 723, 727, 466 P.3d 886 (2020).

Our review of the district court's interpretation and application of the KCPA to Martinez' claims is also de novo. *Wichita Eagle and Beacon Pub. Co., Inc. v. Simmons*, 274 Kan. 194, 221, 50 P.3d 66 (2002).

While the parties hotly dispute the facts material to their claims, those factual disputes do not impede our determination of the narrow issue on appeal, which is: Does the KCPA require an actual exchange for value of property or services to trigger coverage? We find the plain language of the KCPA reveals it does not.

7

The district court granted summary judgment against Martinez because it concluded Martinez had not established a completed consumer transaction. The court based this conclusion on its finding that "no fireplace was ever installed and no money ever exchanged hands for such service." While Martinez never paid Hobbs Mechanical for any property or service, this fact does not exclude Martinez from the protections afforded consumers under the KCPA.

One of the cardinal rules of statutory construction is that we must give effect, if possible, to the entire Act and every part of it. We must reconcile different provisions to make them consistent, harmonious, and sensible. We cannot consider only a certain isolated part or parts of the KCPA but are required to consider and construe together all parts of it in pari materia. *Cochran v. Kansas Dept. of Agriculture*, 291 Kan. 898, 903-04, 249 P.3d 434 (2011). Yet, the district court's interpretation of the KCPA considers the definition of "consumer transaction" in isolation, without reference to how this term is defined and used throughout the Act. For example, the Act's definitions of "consumer," "supplier," and "consumer transaction" all encompass situations where no actual exchange of value for property or services has occurred. See K.S.A. 2020 Supp. 50-624(b) (defining consumer to include someone who "seeks or acquires property or services"); K.S.A. 2020 Supp. 50-624(l) (defining supplier to include a seller who "solicits, engages in or enforces consumer transactions"); K.S.A. 2020 Supp. 50-624(c) (defining consumer transaction to include "a solicitation by a supplier with respect to any" "disposition for value of property or services within this state").

Further, the KCPA generally prohibits both deceptive acts or practices and unconscionable acts or practices "in connection with a consumer transaction," K.S.A. 2020 Supp. 50-626(a); K.S.A. 50-627(a). This "catch-all" prohibition covers conduct that occurs in anticipation of a contemplated consumer transaction. Indeed, K.S.A. 2020 Supp. 50-626(b) contains an illustrative (but nonexclusive) list of per se deceptive acts and practices which includes conduct that commonly occurs without any actual exchange

8

of value for property or services, such as a supplier's offer of property or services with no intent to sell them or no intent to supply reasonable, expectable public demand. K.S.A. 2020 Supp. 50-626(b)(5), (b)(6). And, K.S.A. 50-627(a) specifically notes "[a]n unconscionable act or practice violates this act whether it occurs *before*, during or after the transaction." (Emphasis added.) The broad language of these prohibitions necessarily covers allegations like Martinez', which include behavior before the exchange of any value, property, or services.

Last, in defining the parameters of a violation, the KCPA denotes a violation "not identified to be in connection with a specific identifiable consumer transaction but which is continuing in nature" as a separate violation for each day such act or practice exists. K.S.A. 50-636(d). Since continuing deceptive acts or practices which do not involve an actual exchange of property or services for value (such as a supplier's deceptive advertising campaign) are outlawed, we see no basis to treat isolated deceptive acts or practices which do not involve such an exchange any differently.

The district court's restrictive interpretation of the KCPA immunizes suppliers from liability for actions the Act specifically prohibits. For instance, the Act also prohibits deceptive acts and practices "whether or not any consumer has in fact been misled." K.S.A. 2020 Supp. 50-626(b). Yet under the district court's interpretation, a consumer would have to proceed with payment, even after learning of deceptive conduct, to recover under the KCPA.

One of the enumerated purposes of the KCPA is "to protect consumers from suppliers who commit deceptive and unconscionable practices." K.S.A. 2020 Supp. 50-623(b). The Act is to be liberally construed to promote this purpose. K.S.A. 2020 Supp. 50-623. The district court's restrictive interpretation of the KCPA would seriously undermine the legislative intent of the Act.

9

The district court referenced several published decisions which it claimed supported its restrictive interpretation of the KCPA. Yet none of these decisions stand for the proposition adopted by the district court.

In *The CIT Group v. E-Z Pay Used Cars, Inc.*, 29 Kan. App. 2d 676, 32 P.3d 1197 (2001), a car dealer sued a financing company for violating the KCPA based on the terms of a financing agreement between CIT and E-Z Pay. One of the terms of the agreement required Paul Colyer to guarantee performance under the contract as an individual. Even though Colyer acted as an individual guaranteeing performance under the financing agreement, he was guaranteeing performance of a corporation, which had entered the financing agreement with CIT. Under these circumstances, this court concluded that Colyer was not a consumer under the KCPA because he was promising performance of a corporation that had entered a contract with a supplier. 29 Kan. App. 2d at 685. The court did not address the meaning of the term "consumer transaction," it addressed the meaning of the term "consumer" under the Act.

*The CIT Group* is also distinguishable because Martinez did not engage Hobbs Mechanical to install a fireplace insert as a representative of a corporation. He sought installation of the insert as an individual for his residence. The relationship between Hobbs Mechanical, the supplier, and Martinez, an individual, is the quintessential consumer transaction. The district court improperly relied on *The CIT Group* to justify summary judgment for the defendants.

In *Ellibee v. Aramark Correctional Services, Inc.*, 37 Kan. App. 2d 430, 154 P.3d 39 (2007), an inmate brought KCPA claims against Aramark, a contractual meal provider for the Kansas Department of Corrections (DOC). In affirming the district court's dismissal of Ellibee's KCPA claims, this court reasoned that Aramark did not contract directly with Ellibee for goods or services. Instead, it found Ellibee was a third-party

beneficiary, and Aramark never made any representations to Ellibee directly which could give rise to a KCPA claim.

> "In this case, there is no evidence in the record on appeal that Aramark ever made any representation directly to Ellibee. Aramark negotiated its contract with the DOC. Further, the KCPA requires that any consumer transaction consist of a 'disposition for value.' K.S.A. 50-624(c). There is no evidence of any sale or trade, as the DOC is legally required to provide sustenance for all inmates.
>
> "Ellibee provided nothing of value to Aramark. What was provided to Ellibee was simply a by-product of Aramark's contract with the DOC. The facts are that Ellibee received the meals he requested. Aramark made no representations to Ellibee or engaged in any negotiations with him. Under this set of facts, a third-party beneficiary is not a party to a KCPA consumer transaction. The trial court properly granted Aramark's motion to dismiss." 37 Kan. App. 2d at 433.

The *Ellibee* discussion of the meaning of the term "consumer transaction" was in the context of the relationship of the parties. The agreement to provide meals for inmates was not a consumer transaction because the agreement for goods and services was between Aramark and the DOC. As an arm of the State, the DOC was not a consumer under the KCPA, just as a corporation was not a consumer under the KCPA in *The CIT Group*. It was the DOC, not Ellibee, who provided value to Aramark in exchange for property or services which Aramark provided to the DOC. Ellibee did not qualify as a consumer because he was not a party to the transaction for goods or services.

Ellibee could not establish a consumer transaction under the KCPA because he was a third-party beneficiary of goods and services. Here, Martinez directly solicited property and services from Hobbs Mechanical. And in the transaction contemplated by the parties, Martinez would provide value to Hobbs Mechanical in exchange for Hobbs Mechanical providing property and services to Martinez. Martinez was not a third-party beneficiary of a separate transaction between Hobbs Mechanical and another party.

11

In *Berry v. National Medical Services, Inc.*, 41 Kan. App. 2d 612, 205 P.3d 745 (2009), a registered nurse admitted to the state nursing board that she struggled with alcohol dependency. She agreed to participate in an assistance program that contracted with a private company to provide random testing. As in *Ellibee*, this court affirmed the district court's dismissal of Berry's KCPA claim against the testing provider. In conducting its review, this court assumed for purposes of the appeal that alcohol testing was a service encompassed by the KCPA. 41 Kan. App. 2d at 621-22. That said, the court reached the inevitable conclusion that Berry was a third-party beneficiary of a contract between the nursing board and the service provider. 41 Kan. App. 2d at 622 ("[Berry's] factual allegations disclose transactions between the Board and the defendants but not a consumer transaction between Berry and the defendants.").

*Berry* is distinguishable from Martinez' case in the same way as *Ellibee*. Martinez was not the third-party beneficiary of goods or services provided through a contract between two other parties. Taking the evidence in a light most favorable to him, Martinez entered an oral agreement with Hobbs Mechanical to provide both property (the fireplace insert) and services (the installation of the insert). According to Martinez, he did so because of untrue representations from Hobbs Mechanical's employees. Nothing in *Berry* supports the district court's conclusion that Martinez' interactions with Hobbs Mechanical did not constitute a consumer transaction under the KCPA.

The district court erred in requiring an actual exchange of value for property or services to recover under the KCPA. Taking Martinez' allegations in the light most favorable to Martinez (as we are required to do), we find he has alleged facts to support application of the KCPA to his claims.

Our finding here is in line with other states' interpretation of comparable consumer protection statutes. See *McCrann v. Klaneckey*, 667 S.W.2d 924 (Tex. App. 1984) (noting contemplated purchase or lease transaction does not have to be consummated to

12

invoke provisions of Texas' Deceptive Trade Practices Act, since Texas DTPA defines consumer to include person who merely seeks to purchase or lease good or services); *Scavio v. Smart Corporation*, No. 397CV7209, 2001 WL 631326 (N.D. Ohio 2001) (unpublished opinion) (finding Ohio Consumer Sales Protection Act applies to actions which occur prior to completion of transaction since Ohio's CSPA is to be construed broadly and it prohibits deceptive and unconscionable conduct that happens before, during, or after transaction); *Breuer v. Freedom Movers*, No. 58038, 1990 WL 14154, at *2 (Ohio Ct. App. 1990) (unpublished opinion) (noting legislative language used in illustrative list of prohibited deceptive acts and practices in Ohio's CSPA [which mirrors KCPA's similar list] "indicates the desire to regulate and control suppliers, and not just completed transactions").

Since the district court only analyzed whether Martinez' claims fell within the scope of the KCPA, our analysis of his claims must also stop here. The district court did not address whether Martinez could establish any violation of the KCPA under these circumstances, whether Martinez was aggrieved by any such violation, or whether the Millers could be individually liable as suppliers under the KCPA. Thus, we remand Martinez' KCPA claims for further proceedings with no determination of the merits of those claims.

Reversed and remanded with directions.