(880 P.2d 800)
No. 70,684

SHERYL R. BRYSON and CINDY VANOVER, *Appellants*, v.
THE WICHITA STATE UNIVERSITY, *Appellee*.
Petition for review denied 256 Kan. ____ (November 8, 1994).

Opinion
filed September 9, 1994.

*Paul S. McCausland*, of Young, Bogle, McCausland, Wells & Clark, P.A.,
of Wichita, for appellants.

*Randall H. Elam*, of Wichita, for appellee.

Before ELLIOTT, P.J., BRAZIL, J., and RICHARD W. WAHL, District
Judge Retired, assigned.

ELLIOTT, J.: Sheryl Bryson and Cindy Vanover appeal the trial
court's grant of Wichita State University's (WSU) motion for di-
rected verdict on the ground plaintiffs' suit was time barred.

We reverse and remand.

WSU decided to split one of its departments into two new departments and hire two new executive directors. The new people were hired by Robert Hartsook, Vice President for University Advancement. The new organization was approved by Roger Lowe, Vice President, Administration and Finance, and by Warren Armstrong, WSU President.

Plaintiffs were hired for the new positions, and those positions were unclassified, provisional, annual appointments. Plaintiffs claim certain definitions of funds are accepted in higher education: "Hard money" is predictable, such as taxes and tuition; "soft money" is contingent, such as grants.

On arrival at WSU, plaintiffs received copies of their respective budgets. And while those budgets indicated that some monies were restricted use funds, plaintiffs claim they did not know those funds were soft money.

About eight months after their arrival at WSU, plaintiffs were in a meeting in which they claim they first discovered the restricted use funds were actually soft money and that those funds were no longer available. The WSU president informed plaintiffs the university was committed to their departments and offered plaintiffs another annual appointment, which they accepted.

At the end of their second appointment period, WSU notified plaintiffs their positions were being eliminated due to budget restraints.

Plaintiffs then sued WSU, claiming it misrepresented (through silence) its ability to fund and maintain their positions.

At the close of plaintiffs' evidence, WSU moved for a directed verdict on two grounds: Plaintiffs failed in their burden of proof for a fraud claim, and plaintiffs' suit was time barred. The trial court denied WSU's motion on the first ground but sustained it on the second.

### The "Right for any Reason" Issue

WSU argues we may consider the merits of plaintiffs' claim under the "right for any reason" rule. We disagree.

That rule may be applied in two situations. First, it may be applied where the trial court's findings do not rise to the level of a judicial finding, such as a ruling on an objection. *Williams*

v. *Amoco Production Co.*, 241 Kan. 102, 116, 734 P.2d 1113 (1987).

Second, if the ruling does rise to the level of a judgment, the rule may be applied where an appellee urges affirmance based on new reasons the trial court ignored. *Ellis v. State Farm Mut. Auto. Ins. Co.*, 249 Kan. 599, 604, 822 P.2d 35 (1991).

In the present case, the trial court *rejected* WSU's motion on the merits of the fraud claim. No cross-appeal was filed. Accordingly, we will not consider the merits. See K.S.A. 1993 Supp. 60-2103(h); *Barkley v. Toland*, 7 Kan. App. 2d 625, 646 P.2d 1124, *rev. denied* 231 Kan. 799 (1982).

WSU also argues plaintiffs' brief goes beyond the scope of their appellate docketing statement. The issues presented in the docketing statement are not binding on an appellant. The issues stated in an appellant's brief are binding. See Supreme Court Rules 2.041, 6.02 (1993 Kan. Ct. R. Annot. 10, 26).

On this appeal, we will consider only the statute of limitations issue raised by plaintiffs.

### The Statute of Limitations Issue

K.S.A. 1993 Supp. 60-513 provides:

"(a) The following actions shall be brought within two years: . . . (3) An action for relief on the ground of fraud, but the cause of action shall not be deemed to have accrued until the fraud is discovered. . . .

"(b) . . . [T]he causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action."

Plaintiffs argue they were not injured until they were forced to take different positions at lower wages than those earned while at WSU. In *Admire Bank & Trust v. City of Emporia*, 250 Kan. 688, 829 P.2d 578 (1992), the Supreme Court explained the "substantial injury test" found in subsection (b):

"If the original wrongful act causes substantial injury, the two-year statute of limitations begins to run at the time of the original act. If substantial injury does not occur at the time of the original act but occurs later, then the two-year statute of limitations begins to run when the injury is reasonably

ascertainable. Both prongs of the substantial injury test are subject to the ten-year 'discovery' rule." 250 Kan. at 698.

A reasonably ascertainable injury is inferentially a substantial injury. See *Olson v. State Highway Commission*, 235 Kan. 20, 26, 679 P.2d 167 (1984).

The legal malpractice cases illustrate that when a claim for relief accrues, or when substantial injury occurs, is fact specific. Depending on the facts, there are at least four theories which can apply as to when a claim accrues and the statute of limitations begins to run. *Dearborn Animal Clinic, P.A. v. Wilson*, 248 Kan. 257, 264, 806 P.2d 997 (1991).

Although legal malpractice claims fall under K.S.A. 60-513(a)(4), three of the four theories follow the language of 60-513(a)(3) and 60-513(b): The statute begins to run at the time of the negligent/ fraudulent act; the statute begins to run when plaintiff suffers actual damage; or the statute begins to run when plaintiff discovers, or should have discovered, the essential material facts. See *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 87, 716 P.2d 575 (1986).

Applying *Admire Bank* and the legal malpractice theories to the present case, a plaintiff in a fraud suit must file suit within two years of discovering the fraud if plaintiff suffered ascertainable injury at that time. If not, plaintiff must file within two years of when substantial injury resulting from the fraud is reasonably ascertainable (not to exceed 10 years).

The trial court was incorrect in rejecting plaintiffs' argument that the statute did not begin to run until they first sustained substantial injury. The statute of limitations does not begin to run until the claim accrues, and that occurs when substantial injury occurs. See *Pizel v. Zuspann*, 247 Kan. 54, 76, 795 P.2d 42, *modified* 247 Kan. 699, 803 P.2d 205 (1990).

What constitutes "substantial injury" is somewhat open to question. In *Olson*, the court held the initial injury was not necessarily substantial enough to trigger the running of the statute of limitations, reasoning that parties should not be "forced into court at the first sign of injury, regardless of how slight it might be." 235 Kan. at 27.

Later, however, the court held that "substantial injury" does not require a plaintiff to have knowledge of the full extent of the

injury. "Rather, it means the victim must have sufficient ascertainable injury to justify an action for recovery of damages, regardless of extent." *Roe v. Diefendorf,* 236 Kan. 218, 222, 689 P.2d 855 (1984).

Thus, the critical information is knowledge of the *fact* of injury, not the extent of injury. *Brueck v. Krings,* 230 Kan. 466, 470-71, 638 P.2d 904 (1982). The Supreme Court has also said the discovery of fraud is simultaneous with the discovery of the injury resulting from the fraud. *Jennings v. Jennings,* 211 Kan. 515, 527, 507 P.2d 241 (1973).

Regardless of the proper interpretation of the substantial injury element of 60-513(b), it is clear to us that "where the evidence is in dispute as to when substantial injury first appears or when it becomes reasonably ascertainable, the issue is for determination by the trier of fact." *Hecht v. First National Bank & Trust Co.,* 208 Kan. 84, 93, 490 P.2d 649 (1971).

Plaintiffs argue they did not sustain substantial ascertainable injuries until WSU terminated them, less than two years before they filed suit. WSU argues plaintiffs suffered damages as a result of leaving their previous positions, moving to Wichita, buying new homes, and selling their old houses at losses, more than two years before they filed suit. Frankly, the evidence *might* support either contention.

When reviewing a trial court's ruling on a motion for directed verdict, we must

" 'consider the evidence in a light most favorable to the opposing party. [Citation omitted.] The court does not weigh evidence but must accept as true all the facts which the evidence tends to prove and draw against the party making the motion all reasonable inferences most favorable to the party opposing the motion and if the evidence is of such character that reasonable [persons] in an impartial exercise of their judgment may reach different conclusions, then the case should be submitted to the jury.' " *Boegel v. Colorado Nat'l Bank of Denver,* 18 Kan. App. 2d 546, 549, 857 P.2d 1362 (1993).

Even if WSU is correct that plaintiffs suffered injury when they moved to Wichita, their injury must have been ascertainable when they first accepted the WSU positions and left their previous jobs in order to start the statute running at that time. Since

reasonable persons could reach different conclusions, this question is for the jury to determine.

One issue remains: If WSU is correct that plaintiffs suffered ascertainable injury when they accepted employment at WSU, the question of when plaintiffs first discovered or should have discovered the fraud then becomes the trigger starting the running of the statute of limitations.

The trial court found that plaintiff Vanover should have discovered the fraud by January 1, 1990, and that plaintiff Bryson should have discovered it by May 1, 1990.

Like the issue of when plaintiffs first suffered substantial injury, when they discovered or should have discovered the alleged fraud is a question of fact. See 37 Am. Jur. 2d, Fraud and Deceit § 408. The evidence of when plaintiffs should have discovered the fraud is in dispute. Plaintiffs claim they discovered the fraud at a meeting on June 12, 1990, where they were first told that budgeted funds were soft money.

On the other hand, WSU claims plaintiffs should have discovered the alleged fraud upon their arrival at the university, when they were given their departmental budgets showing some monies were restricted use funds. Once plaintiffs had this knowledge, they could easily have discovered exactly what restricted use funds were and from where they came.

Interestingly, both sides rely on a June 12, 1990, memo plaintiffs wrote to the WSU president to support their arguments. The controversial statement in the memo is: "We [plaintiffs] have been attempting to address the distressing budget situation in our departments since we arrived in the fall."

Plaintiffs argue, and Vanover testified, the statement refers to the problem of splitting one departmental budget into two workable budgets for the two new departments. WSU argues the statement shows that plaintiffs knew, or at least were on notice, of soft money in their budgets, if not of the alleged fraud itself.

There is a legitimate dispute as to when plaintiffs should have discovered the fraud. The trial court, in effect, acknowledged this when it stated its finding that Bryson should have discovered the fraud by May 1, 1990, was somewhat arbitrary.

Referring to Bryson's testimony that her budget documents were on her desk when she arrived at WSU, the trial judge said,

"[S]he did get through them at some point and she wasn't exactly [sure] when, so being as generous as I could with respect to that, I made the finding that she should have done that at least by the 1st of May."

Drawing all inferences in favor of plaintiffs, as we must (*Boegel,* 18 Kan. App. 2d at 549), the evidence is such that reasonable persons could reach different conclusions as to when plaintiffs discovered or should have discovered the alleged fraud.

The statute of limitations question should have been submitted for jury determination. We express no opinion on the merits of plaintiffs' claims.

Reversed and remanded for a new trial.