**EVOLUTION, INC., Plaintiff,**

v.

**SUNTRUST BANK, et al., Defendants.**

**No. CIV.A. 01–2409–CM.**

United States District Court,
D. Kansas.

May 14, 2004.

See also 2004 WL 2271776.

Gregory B. Hancks, Kutak Rock LLP, Kansas City, MO, Lance Y. Kinzer, Michael R. Clarke, Schlagel, Damore & Gordon, L.L.C., Olathe, KS, Richard P. Jeffries, Kutak Rock LLP, Omaha, NE, for Plaintiff.

Bryan G. Harrison, Morris, Manning & Martin, Atlanta, GA, Russell S. Jones, Jr., Shughart Thomson & Kilroy, PC, Kansas City, MO, for Defendants.

## *MEMORANDUM AND ORDER*

MURGUIA, District Judge.

Plaintiff Evolution, Inc. ("Evolution") brought suit against defendants SunTrust Bank ("SunTrust"), Premium Assignment Corporation ("PAC"), and SunTrust Services Corporation ("STSC")[1] asserting claims for copyright infringement, breach of contract, and misappropriation of trade secrets. Defendants countered suit on theories of breach of contract, negligent misrepresentation, and fraud.

This matter comes before the court on Plaintiff's Motion for Summary Judgment on Defendants' First Theory of Recovery: Breach of Agreement for Software Services (Doc. 120), Plaintiff's Motion for Partial Summary Judgment on Defendants' Second Theory of Recovery: Breach of Source License (Doc. 121), Plaintiff's Motion for Summary Judgment on Defendants' Third Theory of Recovery: Breach of Data Door License (Doc. 122), and Plaintiff's Motion for Summary Judgment on Defendants' Fourth and Fifth Theories of Recovery: Negligent Misrepresentation and Fraud (Doc. 125).[2]

---

1. Defendants have stipulated that SunTrust is a successor-in-interest to STSC.

2. The court advises counsel that, in the future, efficiency and clarity would be better served by plaintiff filing a single motion.

## I. Factual Background [3]

### A. License Agreement

On June 30, 1998, plaintiff and defendant PAC entered into a contract titled "Agreement for Software, Services" (the "License Agreement") licensing plaintiff's "PF2000 Ver. 4.6" software (the "PF2000 software"). Prior to entering into the License Agreement, plaintiff provided defendants with a demonstration copy of the PF2000 software, although the parties dispute whether it was a full working copy or a limited evaluation copy. In Part I, Section 5 of the License Agreement, plaintiff warranted and represented that the licensed software would perform in conformity with the demonstration software. Section 5 also states that if defendant PAC discovered errors in the software's performance, plaintiff would remedy the problems. In Section 3, the parties agreed that the payments defendant PAC made to plaintiff

shall be refundable if a deficiency in the program is discovered which deficiency is determined by the parties to be caused do to a defect in the Licensed Programs in their unmodified format as opposed to defects resulting from the hardware, system configurations or alternate software applications of the Customer.

The License Agreement also contains several clauses that disclaim warranties or limit plaintiff's liability. In Part III, Section 1, defendant acknowledged that the software could be inoperable during modification periods. Part I, Section 5 provides the following disclaimer:

To the maximum extent permitted by applicable law, Evolution disclaims all other warranties, either express or limited, including, but not limited to implied warranties of merchantability and fitness for a particular purpose, with regard to the Licensed Programs, the accompanying written materials and any accompanying hardware. This limited warranty give[s] you specific legal rights. You may have others which vary from state/country to state/country.

Part I, Section 6 provides a limit to plaintiff's liability:

To the maximum extent permitted by applicable law, in no event shall Evolution be liable for any consequential, special or incidental damages whatsoever (including, without limitation, damages for loss of business profits, business interruption, loss of business information, or any other pecuniary loss) arising out of the use of or inability to use the Licensed Program, even if Evolution has been advised of the possibility of such damages. Because some state/countries do no allow the exclusion or limitation of liability for consequential or incidental damages, the above limitation may not apply to you.

Part IV, Section 4 limits any potential remedy sought by defendants:

Evolution's liability for damages to Customer for any cause whatsoever under this Agreement, including without limitation those arising from the services, Licensed Programs furnished hereunder, and claims for propriety right or copyright infringement, and regardless of the form of action, whether in contract or in tort including negligence, are be limited to $174,744.00 or actual damages, whichever is less.

Exhibit A to the License Agreement, Section 7 provides:

---

**3.** The court also incorporates by reference the factual background set forth in its May 12, 2004, Order (Doc. 173).

Evolution's liability to the Customer for any losses or damages, direct or indirect, arising out of the Contract shall not exceed the total amount billed or billable to the Customer for the performance of the particular work order which gave rise to the loss or damage.

### B. Source License

On July 1, 1998, plaintiff and defendant PAC entered into a contract titled "Source License for Evolution's PF2000 Software" ("Source License"). An introductory paragraph labeled "Source License Fee" states that the Source License is granted for "$1.00 and other valuable consideration." Section 2.2 provides: "For the Source License Fee and with the executed Agreement for Software, Services [ (the License Agreement) ] for PF2000 dated 6–30–98 having been paid in full, Evolution will supply licensee with one copy of the available PF2000 Source Code . . . ."

Section 14.1 of the Source License disclaims plaintiff's potential liability for consequential damages, using language almost identical to Part I, Section 6 of the License Agreement. Section 15.1 limits plaintiff's potential liability: "Apart from the foregoing limited warranty, the software programs as provided 'AS IS', without warranty of any kind, either expressed or implied." Section 15.1 also disclaims any other express or implied warranties, using language nearly identical to Part I, Section 5 of the License Agreement.

### C. Data Door License

On September 10, 1998, plaintiff and defendant PAC entered into a contract titled "Data Door License for Evolution's PF2000 Software" ("Data Door License"). The Data Door License contains clauses limiting plaintiff's liability similar, if not the same, to those contained in the License Agreement and Source License, including Section 15.1 which duplicates exactly the language in Section 15.1 of the Source License.

### II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505;

*see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### III. Analysis

#### A. Breach of Agreement for Software Services

Plaintiff asserts that the court should grant its motion for summary judgment on defendants' breach of License Agreement claim because plaintiff delivered a full working copy of the software that performed, it claims, in conformity with the demonstration software provided to defendants.

█ The court concludes that summary judgment is not appropriate on defendants' claim due to the numerous factual disputes regarding the performance of plaintiff's software. Defendants controvert plaintiff's assertion that it provided defendants with a full working demonstration copy of the software. Defendants also proffer evidence, which the court more fully detailed in its May 12, 2004, Order, of their ongoing difficulties with plaintiff's software. The court therefore denies plaintiff's motion for summary judgment.

█ Plaintiff also contends that, even if it is liable for failure to comply with the License Agreement, the limitation of damages clause restricts defendants' recoverable damages to $174,744.00 or actual damages, whichever is less. Defendants assert that the limitation of damage clause is an impermissible attempt by plaintiff to disclaim an express warranty.

Under Kansas law, an express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Kan. Stat. Ann. § 84–2–313(1)(a). An express warranty may be excluded or modified, with the limitation that "[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed whenever reasonable as consistent with each other." *Id.* § 84–2–316(1). Official UCC Comment 1 explains: "This section is designed principally to deal with those frequent clauses in sales contracts which seek to exclude 'all warranties, express or implied.' It seeks to protect a buyer from unexpected and unbargained language when inconsistent with language of express warranty ...." 1996 Kansas Comment 1 further advises:

> "[L]anguage creating warranties and language apparently creating disclaimers are to be construed as consistent with each other whenever reasonable, but if such a construction is unreasonable, the disclaimer is ineffective."

In Part I, Section 5 of the License Agreement, plaintiff represented that the licensed software would perform in conformity with the demonstration software, thus creating an express warranty. Part I, Section 5 also states that plaintiff disclaims any other warranties. Part IV, Section 4 limits defendants' potential damages to $174,744.00, but the section does

not attempt to disclaim plaintiff's express warranty. That is, the court finds that Part IV, Section 4 is not a disclaimer of an express warranty; rather, the clause limits the award that defendants may seek. Even if Part IV, Section 4 were a disclaimer, the clause would not be unlawful because it could reasonably be read in harmony with plaintiff's express warranty. Therefore, the court concludes that, in accordance with the terms of the License Agreement, defendants' damages for plaintiff's alleged breach of the License Agreement shall be limited to $174,744.00 or actual damages, whichever is less. The actual amount, if any, however, is a question of fact to be determined at trial.

### B. Breach of Source License

Plaintiff asserts that the court should limit defendants' potential recovery for plaintiff's alleged breach of the Source License to $1.00 or actual damages, whichever is less.

Plaintiff cites no section in the Source License that supports its contention that defendants' actual damages should be limited. Unlike the License Agreement, the Source License does not contractually limit defendants' potential recovery for actual damages. Plaintiff's motion for summary judgment is therefore denied.

### C. Data Door License

Plaintiff contends that it did not breach the Data Door License because the contract provided that the software and documentation were provided "as is," without any warranties of any kind. Plaintiff thus asserts that it had no legal duties under the Data Door License other than providing defendants with a copy of the software and documentation, regardless of the performance of the software.

Defendants first argue that the "as is" disclaimer amounts to an illusory promise

because it did not require defendants to deliver anything of value.

■ A promise that provides one party with complete discretion whether to perform makes the promise illusory. *CIT Group/Sales Financing, Inc. v. E–Z Pay Used Cars, Inc.*, 29 Kan.App.2d 676, 678–79, 32 P.3d 1197 (Kan.Ct.App.2001) (citing *Flight Concepts Ltd. P'ship v. Boeing Co.*, 819 F.Supp. 1535, 1553 (D.Kan.1993)); *see also* Restatement (Second) of Contracts § 2 cmt. e ("Words of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise."). Because the promise does not in actuality promise anything, it cannot serve as consideration to create a contract. Consequently, because a contract created around an illusory promise lacks valid consideration, the remedy is to find the contract unenforceable. *See, e.g., CIT*, 32 P.3d at 1200–01.

■ The court concludes that the phrase "as is" did not render plaintiff's promise illusory. Plaintiff did not have the discretion under the Data Door License to refuse performance entirely by not delivering the software and documentation. While plaintiff may have provided a copy of its software that did not meet defendants' expectations, the Data Door License obligated plaintiff to deliver the software in exchange for defendants' payment. Plaintiff's promise was not illusory; rather, defendants' complaint goes to the terms of the contract and whether plaintiff executed its promise according to those terms, including compliance with any alleged warranties.

■ Defendants next contend that the "as is" disclaimer is an unlawful attempt to disclaim an express warranty in the Data Door License.

A seller cannot both create and then disclaim an express warranty. Kan. Stat. Ann. § 84–2–316(1). An express warranty may be created by a seller's affirmation of fact or promise about the quality or performance of the seller's goods. *Id.* § 84–2–313(1)(a). Also, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id.* § 84–2–313(1)(b). Notably, "[i]t is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee,' *or that he have a specific intention to make a warranty.*" *Id.* § 84–2–313(2) (emphasis added). As Official UCC Comment 3 explains:

> No specific intention to make a warranty is necessary if any of these factors is made part of basis of the bargain. In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact.

Defendants contend that the introductory paragraph in the Data Door License created an express warranty by promising that the software would provide "a SQL Access to PF2000 … or PF32." That is, defendants argue that this description of the Data Door software provided a basis of the parties' bargain sufficient to create an express warranty that Data Door could access PF2000 or PF32, which defendants' claim the software could not.

The court cannot decide as a matter of law whether plaintiff created an express warranty in the Data Door License. By law, a description of goods that becomes a part of the bargain can establish an express warranty. However, the determination of whether the introductory paragraph created an express warranty is a question of fact that must be decided by a jury. A jury must decide, based upon the evidence presented at trial, whether the language in the Data Door License represented an express warranty. The court denies plaintiff's motion for summary judgment on defendants' claim that plaintiff breached the Data Door License.

### D. Fraud and Misrepresentation

Plaintiff moves for summary judgment on defendants' fraud and misrepresentation claims. The elements of fraud are: "[1] an untrue statement of material fact; [2] known to be untrue; [3] made with the intent to deceive or with reckless disregard for the truth; and [4] upon which another party justifiably relies to his or her detriment." *Smith v. Stephens,* 23 Kan.App.2d 1013, 1015, 940 P.2d 68, 70 (1997) (citations omitted). The elements of negligent misrepresentation are:

> "(1) the defendant made a false statement regarding a transaction in which he or she had a pecuniary interest; (2) the defendant failed to exercise reasonable care to ascertain or communicate the accuracy of the statement; (3) the plaintiff justifiably relied upon the statement; and (4) the plaintiff thereby incurred a loss." *Dill v. Barnett Funeral Home, Inc.,* 83 P.3d 1270, at 2004 WL 292124, *4–5 (Kan.App.2004) (citing *Mahler v. Keenan Real Estate, Inc.,* 255 Kan. 593, 876 P.2d 609, 616 (1994) (citing Restatement (Second) of Torts § 552)).

#### 1. Statute of Limitations

Plaintiff first asserts that defendants' fraud and misrepresentation claims are barred because they were brought after the expiration of the 2–year statute of

limitations provided by Kansas Statutes Annotated § 60–513. Plaintiff details several of defendants' factual allegations and states that the statute of limitations has expired on "most" of them. (Pl. Mem. S.J. on Def. Fourth and Fifth Theories, at 9).

■ The elements supporting defendants' fraud and misrepresentation claims are the subject of significant factual disputes between the parties. Adding to this complexity is that, under Kansas law, "the statute of limitations [on a fraud claim] is not triggered until the claim has accrued." *Kan. Wastewater, Inc. v. Alliant Techsys., Inc.*, 257 F.Supp.2d 1344, 1349 (D.Kan. 2003) (citing *Bryson v. Wichita State Univ.*, 19 Kan.App.2d 1104, 1107, 880 P.2d 800 (1994)). A claim for fraud accrues at the later of:

> (1) the time of the negligent/fraudulent act; (2) when the plaintiff suffers substantial injury (that is reasonably ascertainable); or (3) when the plaintiff discovers, or should have discovered, the essential material facts of the fraud. In other words, a plaintiff in a fraud lawsuit must file his or her action within two years of discovering the fraud if he or she suffered an ascertainable injury at that time. If not, the plaintiff must file suit within two years of when substantial injury resulting from the fraud is reasonably ascertainable (not to exceed ten years).

*Id.* (citing *Bryson*, 19 Kan.App.2d at 1107, 880 P.2d 800). Further, the question of when the plaintiff discovered the fraud or when the plaintiff's injury should have been ascertainable are questions of fact. *Id.* (citing *Bryson*, 19 Kan.App.2d at 1108–09, 880 P.2d 800). "Thus, where the evidence is in dispute as to when the fraud should have been discovered, when substantial injury first occurred, or when that injury became reasonably ascertainable, the trier of fact decides the issues." *Id.*

(citing *Bryson*, 19 Kan.App.2d at 1108–09, 880 P.2d 800).

When defendants discovered, or should have discovered, plaintiff's alleged fraud and/or misrepresentation is a significantly controverted issue of fact, particularly because defendants allege that they were "lulled into foregoing an investigation or filing a claim" by plaintiff's promises to fix its software to defendants' satisfaction. *See id.* ("Mere suspicion of wrong [due to fraud] is not sufficient. [T]he Kansas Supreme Court has explained that while a party's suspicions may have been aroused, that party 'may be lulled into confidence by certain representations and forego any further investigation.'" (quoting *Augusta Bank & Trust v. Broomfield*, 231 Kan. 52, 63, 643 P.2d 100 (1982)) (other citations omitted)). Therefore, the court cannot decide this issue as a matter of law and denies plaintiff's motion for summary judgment.

### 2. Puffery

Plaintiff next argues that summary judgment should be granted on defendants' fraud and misrepresentation claims because plaintiff's statements about the performance of its software were opinions or puffery and not factual.

■ To be actionable, an alleged fraudulent representation "must relate to past or present fact, as opposed to mere opinions or puffing or promised actions in the future." *Timi v. Prescott State Bank*, 220 Kan. 377, 389, 553 P.2d 315 (1976). The court certainly finds interesting plaintiff's present disclaimers regarding the statements it made about the performance of its software. However, the intention of plaintiff when making the statements and the parties' interpretations of such statements are questions of fact that a jury must decide. The court denies plaintiff's motion for summary judgment on the basis

that plaintiff's statements were mere puffery.

### 3. Reasonable Reliance

■ Defendants assert that plaintiff misrepresented its ability and willingness to perform as it promised in the various license agreements. Plaintiff argues that the court should grant its motion for summary judgment because defendants' reliance was not reasonable or justified, a required element of fraud and misrepresentation claims.

Plaintiff states that defendants were given a demonstration copy and, therefore, any failures with the licensed software should already have been known to defendants. But as the court already noted above, defendants contend that the demonstration copy was not a full working copy. Plaintiff next asserts that the parties agreed to broad waivers of warranties in the Data Door License. However, the court has concluded that there is an issue of fact regarding the warranty disclaimer in the Data Door License, thus making summary judgment inappropriate.

■ Plaintiff also argues that the parol-evidence rule precludes defendants from introducing any evidence of plaintiff's alleged misrepresentations. Under Kansas law, "[p]arol evidence is inadmissible to introduce statements or representations made during the negotiations that conflict with the written agreement." *Flight Concepts Ltd. P'ship v. Boeing Co.*, 38 F.3d 1152, 1157 (10th Cir.1994) (citing *Edwards v. Phillips Petroleum Co.*, 187 Kan. 656, 659, 360 P.2d 23 (1961)). Importantly to the matter at hand, however, the rule applies only "absent fraudulent misrepresentation." *Id.* (citing *Edwards*, 187 Kan. at 659, 360 P.2d 23). That is, "[a]n exception exists where evidence establishes that, at the time the promise as to future events was made, the promisor did not intend to perform the promised action." *Id.* (citing *Edwards*, 187 Kan. at 660, 360 P.2d 23).

The basis of defendants' fraud and misrepresentation claims is that plaintiff intentionally or negligently mislead defendants when plaintiff promised that its software would perform certain functions and that plaintiff could provide certain services. Thus, defendants' allegations, if accepted by a jury, would provide an exception to the parol-evidence rule. As determination of this factual issue must be made by a trier of fact, the court denies plaintiff's motion for summary judgment.

### 4. Contractual Limits on Recovery

Plaintiff contends that defendants' recovery for plaintiff's alleged fraud or misrepresentation with respect to the License Agreement should be limited to $174,744.00 or actual damages, whichever is less, in compliance with Part IV, Section 4 of the license.

■ However, "Kansas law provides alternative remedies to a plaintiff who has been fraudulently induced to buy and pay for property delivered to him. He may disaffirm the contract and sue for rescission, in which case he seeks restoration of his status before the sale was completed. In the alternative, he may affirm the contract and sue for damages." *Whittenburg v. L.J. Holding Co.*, 830 F.Supp. 557, 563 (D.Kan.1993) (citing *Waggener v. Seever Sys., Inc.*, 233 Kan. 517, 523, 664 P.2d 813 (1983)). Before or at the outset of trial, defendants must choose their remedy. If defendants affirm the contract, then their potential recovery will be limited by Part IV, Section 4 of the License Agreement. However, defendants could decide to disaffirm the contract, in which case defendants may seek an amount in damages that will restore defendants' status before the sale. Consequently, the court will not decide at this juncture in the proceedings that de-

fendants are limited by Part IV, Section 4 of the License Agreement. The court denies plaintiff's motion for summary judgment.

Plaintiff also asserts that defendants' recovery for plaintiff's alleged fraud or misrepresentation with respect to the Source License and Data Door License should be limited to the license fees or actual damages, whichever is less.

Plaintiff cites no clause in the Source License or Data Door License to support its argument. Both licenses state that plaintiff cannot be held liable for consequential damages, but neither restricts potential recovery for actual damages. Plaintiff's motion, therefore, is denied.

## IV. Order

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment on Defendants' First Theory of Recovery: Breach of Agreement for Software Services (Doc. 120) is granted in part and denied in part. The court denies summary judgment on the claim but orders that defendants' potential recovery for plaintiff's alleged breach of the License Agreement shall be limited to $174,744.00 or actual damages, whichever is less.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment on Defendants' Second Theory of Recovery: Breach of Source License (Doc. 121), Plaintiff's Motion for Summary Judgment on Defendants' Third Theory of Recovery: Breach of Data Door License (Doc. 122), and Plaintiff's Motion for Summary Judgment on Defendants' Fourth and Fifth Theories of Recovery: Negligent Misrepresentation and Fraud (Doc. 125) are denied.