NOT DESIGNATED FOR PUBLICATION

No. 126,815

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BARTLETT FAMILY REAL ESTATE FUND, LLC, et al.,
*Appellants*,

v.

PAUL ROBBEN, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; RHONDA K. MASON, judge. Oral argument held on July 9, 2024. Opinion filed August 9, 2024. Reversed and remanded with directions.

*Deron A. Anliker*, of Duggan Shadwick Doerr & Kurlbaum LLC, of Overland Park, for appellants.

*Robert M. Pitkin*, of Horn Aylward & Bandy, L.L.C., of Kansas City, Missouri, for appellees.

Before ARNOLD-BURGER, C.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: This action arises out of a failed residential real estate project—known as the Foxfield Project—that has led to many years of litigation in various venues since 2011. This appeal comes to us from one of the lawsuits filed in Johnson County District Court in which summary judgment was granted on the grounds that the claims asserted are barred by the statute of limitations. However, based on our review of the record on appeal, we conclude that there are genuine questions of material fact that preclude the entry of summary judgment. Thus, we reverse and remand this case to the district court for further proceedings.

1

*The Parties*

Paul Robben (Robben) is a real estate developer, Ernest J. Straub III (Straub) is in the commercial and residential construction business, and Richard A. Bartlett (Bartlett) does business in the technology sector. At one time, the three were evidently friends and attended church together. Unfortunately, they have been involved in litigation with one another over a failed business venture for more than a decade.

*The Foxfield Project*

In 2000, Robben formed a limited liability company—Foxfield Associates, LLC (Foxfield Associates)—with several other investors who are not parties to this appeal. Two years later, Robben formed another limited liability company—RDC Holdings, LLC (RDC Holdings)—in which he was the sole owner. In order to finance a residential development venture, Foxfield Associates borrowed money from the Bank of Blue Valley (the Bank). The venture—known as the Foxfield Project—involved the development of approximately 32 acres of real property in Olathe. Although the Bank loaned the money to Foxfield Associates, Robben personally guaranteed the promissory note.

In 2007, the Foxfield Project was facing financial problems. In response, Robben began developing a strategy to find additional investors to contribute capital into the real estate project. A few months after the loan matured on June 30, 2007, the Bank informed Robben that it planned to foreclose on the real property and to pursue Robben under the terms of his personal guaranty for the anticipated deficiency.

Although the nature of the discussions is unclear from the record, Robben sought to have Bartlett and Straub invest in the Foxfield Project. The record reflects that Robben

had multiple discussions with them regarding their potential investment in the real estate project between August 2006 and March 24, 2008. At the time, Robben, through RDC Holdings, and Straub were members of a manager-managed limited liability company—known as PRES, LLC—that they had formed for an unrelated real estate project. Straub and RDC Holdings were the equal ownership members of PRES, LLC, and RDC Holdings served as the manager. Robben and Bartlett had also previously done business together on another unrelated development project in 2006.

In May 2007, Robben and Straub—through PRES, LLC—and Bartlett—through a limited liability company known as Bartlett Family Real Estate Fund, LLC (Bartlett Family Real Estate)—formed Foxfield Villa Associates, LLC (Foxfield Villa). According to the operating agreement, PRES, LLC and Bartlett Family Real Estate each owned 50% of Foxfield Villa. Furthermore, the Foxfield Villa operating agreement named Robben as President and Treasurer, Straub as Vice President, and Bartlett as Secretary of the limited liability company.

On November 12, 2007, Robben informed the Bank that Foxfield Villa would be purchasing 9.1 acres of undeveloped land from Foxfield Associates. At that point, no agreement had been reached by the members of Foxfield Villa to purchase this real property. Subsequently, at a meeting with Robben in late February or early March 2008, Straub and Bartlett apparently agreed that Foxfield Villa would buy the 9.1 acres of undeveloped land and that it would be subdivided into 40 residential lots. During this meeting, Robben evidently told Bartlett and Straub that this property had been appraised at $800,000. Yet it appears that neither Bartlett nor Straub requested to view the purported appraisal.

On March 24, 2008, Robben, Straub, and Bartlett executed a business loan agreement and construction loan agreement with the Bank in their capacity as owners of the member LLCs of Foxfield Villa. As a result, the Bank loaned Foxfield Villa the

3

principal amount of $1,440,000 plus interest at the rate of 5.25% for the purchase of 9.1 undeveloped acres and for their development into 40 residential lots. Along with granting the Bank a construction mortgage, Robben, Bartlett, and Straub signed pro rata personal guarantees based on the amount of their investment to secure the loan. On this same date, Foxfield Associates entered into a sales contract with Foxfield Villa to buy the 9.1 acres of undeveloped real estate for $800,000.

Even so, the Foxfield Project and Robben continued to have financial difficulties. Only six months after Foxfield Villa obtained the loan from the Bank, Robben disclosed to Straub that his financial problems were preventing him from making any additional contributions to Foxfield Villa. By the end of 2008, Robben had stopped managing Foxfield Villa's finances, and Bartlett assumed this responsibility. Effective January 1, 2009, Robben—through RDC Holdings—resigned his position as manager of PRES, LLC. Moreover, Foxfield Villa failed to sell the 40 residential lots and its members decided to hold off on developing the lots until the real estate market improved.

In May 2009, Robben discussed with Bartlett and Straub the need for cash to pay real estate taxes and informed them of his inability to contribute to Foxfield Villa's cash needs. A few months later, Robben told Bartlett that his "financials do not look pretty" and reiterated his inability to inject additional capital into Foxfield Villa. In addition, Robben told Bartlett that the original development plan no longer made economic sense. As such, it was agreed that Foxfield Villa would only offer the lots to customers that came directly to them and were qualified to buy. Around the same time, Bartlett also agreed to loan Foxfield Villa $5,000 to cover RDC Holdings' portion of capital contributions.

In an email exchange between Bartlett and Robben on August 4 and 5, 2009, Bartlett stated, "I need to really look at if I'm throwing good [money] at bad right now. I am very concerned that I am keeping a sinking ship afloat. Please tell me I'm not and help

me see the Coast Guard on the horizon." In response, Robben reassured Bartlett that he was "not keeping a sinking ship afloat . . . ." Robben also informed Bartlett that he could not see how Bartlett's investment "could be considered at risk."

Ultimately, Foxfield Villa defaulted on the loan on June 10, 2011. The following month, Straub sent a letter to the Bank on behalf of the limited liability company regarding options for repayment of the loan. On August 15, 2011, Bartlett and Straub attended a meeting at which the Bank rejected various proposals they made on behalf of Foxfield Villa. Likewise, the Bank demanded payment in full and expressed the intent to sue them both on their personal guarantees for the amount of the anticipated deficiency.

*The Litigation*

The first of several lawsuits arising out of the Foxfield Project was filed in the Johnson County District Court on September 1, 2011. In that case, Bartlett Family Real Estate, PRES, LLC, Foxfield Villa, Bartlett, and Straub (collectively the Plaintiffs) sued the Bank. On August 10, 2012—while the 2011 case was still pending in state court—the Plaintiffs filed a lawsuit in the United States District Court for the District of Kansas against the Bank and several of its officers. In both lawsuits, the Plaintiffs alleged the Bank and its officers had failed to disclose material information about Robben's financial condition.

In January 2013, the United States District Court stayed the federal case under the *Colorado River* abstention doctrine while the 2011 state court case was pending. See *Foxfield Villa Associates, LLC v. Regnier*, 918 F. Supp. 2d 1192 (D. Kan. 2013). Subsequently, on March 8, 2013, the Plaintiffs filed a second lawsuit in federal court not only against the Bank but also against Robben and RDC Holdings. Significantly, this was the first lawsuit filed by the Plaintiffs against Robben and RDC Holdings. In this action,

the Plaintiffs asserted a federal claim under the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a-qq, as well as several claims under Kansas law.

On April 3, 2013, Robben filed a petition in the United States Bankruptcy Court seeking relief under Chapter 7 of the United States Bankruptcy Code. In response, the Plaintiffs filed an adversary proceeding against Robben in the bankruptcy court. Subsequently, the United States District Court consolidated and stayed the Plaintiffs' two federal lawsuits pending the outcome of the state court action. See *Foxfield Villa Associates, LLC v. Robben*, 309 F. Supp. 3d 959, 964 (D. Kan. 2018). On February 6, 2014, the bankruptcy court granted Robben a discharge but excepted the consolidated federal case from its order.

In June 2015, the Johnson County District Court entered judgment in favor of the Bank in the initial state lawsuit. While the case was on appeal, the Plaintiffs reached a settlement with the Bank and the appeal was dismissed. After the settlement, the only remaining claims in the consolidated federal case were the Plaintiffs' claims against Robben and RDC Holdings. The stay of the consolidated federal action was lifted on November 25, 2015, and the federal court granted the Plaintiffs leave to file an amended complaint. See *Foxfield Villa Associates*, 309 F. Supp. 3d at 964.

Meanwhile, on August 31, 2016, the Plaintiffs filed a lawsuit in Johnson County District Court against Robben's wife—Lori Robben—and her real estate business asserting that Lori Robben had vicarious liability for the claims alleged against Robben. The Plaintiffs claimed that Robben told them he was a Kansas real estate agent and broker, but he was acting as the transaction broker under Lori Robben's supervising authority during the 2008 transaction. The district court entered summary judgment in favor of Lori Robben and her company on the grounds that the Plaintiffs' negligence claims were barred by the statute of limitations and the other claims were barred on the

merits. On appeal, a panel of this court affirmed the district court's decision. *Foxfield Villa Assocs. v. Robben*, 57 Kan. App. 2d 122, 124-25, 449 P.3d 1210 (2019).

In February 2018, the United States District Court entered summary judgment for Robben and RDC Holdings on the Plaintiffs' claim under the Securities Exchange Act in the pending consolidated federal court case. Consequently, the federal court also dismissed the Plaintiffs' state law claims without prejudice. *Foxfield Villa Associates, LLC v. Robben*, 309 F. Supp. 3d 959 (D. Kan. 2018). Subsequently, the United States Tenth Circuit affirmed this decision. *Foxfield Villa Associates, LLC v. Robben*, 967 F.3d 1082 (10th Cir. 2020), *cert. denied* 141 S. Ct. 1385 (2021).

While the Tenth Circuit appeal was pending, the Plaintiffs sought further modification of the bankruptcy court's discharge order to allow them to pursue their state claims in the pending Johnson County District Court case. On August 21, 2018, the bankruptcy court entered an order permitting the Plaintiffs to pursue their claims asserted under Kansas law against Robben and RDC Holdings in state court. The next day, the Plaintiffs filed this action.

In this case, the Plaintiffs assert 15 causes of action against Robben and RDC Holdings (collectively the Defendants). The causes of action are for: Breach of fiduciary duty (Counts 1-3); fraud (Counts 4-7); violation of the Kansas Uniform Securities Act (Count 8); negligent misrepresentation (Count 9); negligence (Count 10); tortious interference with contracts and business expectancy (Counts 11-12); conversion (Count 13); civil conspiracy (Count 14); and joint venture (Count 15). Each of the claims relate to a common set of factual allegations arising out of various statements allegedly made by Robben—as well as on various actions and inactions that he allegedly took or failed to take—to induce the Plaintiffs to invest in the Foxfield Project.

7

The alleged misrepresentations include—but are not limited to—falsely informing the Plaintiffs that the value of the 9.1 acres of undeveloped property was $800,000. It was later discovered that the property had actually been appraised at $600,000. The Plaintiffs also allege that Robben falsely represented the projected construction costs to develop the property and presented them with pro forma financial statements that "guaranteed" that Bartlett and Straub would recoup their investments.

In addition, the Plaintiffs allege Robben falsely represented to them that the proceeds from the loan to Foxfield Villa would be used only for development of the 9.1 acres and for other business expenses incurred by Foxfield Villa. According to the Plaintiffs, it was later discovered that these funds were used—at least in part—to pay off Robben's personal indebtedness to the Bank on the loan to Foxfield Associates. As stated above, the Plaintiffs were not members of Foxfield Associates.

After various federal appeals were completed—including the denial of a petition for writ of certiorari by the United States Supreme Court—the bankruptcy court issued its final order granting the Plaintiffs the right to pursue their pending state claims. *In re Robben*, No. 13-20814, 2022 WL 828188 (Bankr. D. Kan. 2022); see also *Foxfield Villa Associates, LLC v. Robben*, 967 F.3d 1082 (10th Cir. 2020), *cert. denied* 141 S. Ct. 1385 (2021). As a result, the Johnson County District Court lifted its stay in this case on August 1, 2022.

After completion of discovery, the Defendants moved for summary judgment on the ground that all the Plaintiffs' causes of actions were barred by the statute of limitations. Alternatively, they requested summary judgment on some or all of the 15 causes of action on the merits. In response, the Plaintiffs agreed that their claims were based on actions occurring on or before March 24, 2008, and that each of their causes of action are governed by a two-year statute of limitations. But the Plaintiffs asserted that the alleged improper acts committed by the Defendants were not reasonably ascertainable

8

until the Plaintiffs received discovery from the Bank in the state court litigation on December 21, 2011. As a result, the Plaintiffs alleged that the statute of limitations could not have begun to run before that date.

On March 9, 2023, the district court held a hearing on the motion for summary judgment. After hearing the arguments of counsel, the district court took the motion under advisement. Then, on March 30, 2023, the district court orally announced from the bench its preliminary decision to enter summary judgment in favor of the Defendants on all 15 causes of action. In particular, the district court stated that each cause of action is barred by the statute of limitations.

On April 26, 2023, the district court issued its memorandum decision and order granting the Defendants summary judgment as a matter of law. Although the district court did not state the date on which any or all of the Plaintiffs' causes of action became reasonably ascertainable, it concluded that it was sometime "more than two years before the filing of the first lawsuit against Paul Robben and RDC on March 8, 2013." The district court explained that the Plaintiffs should have been able to detect the alleged fraud—as well as the other claims asserted in this lawsuit—through reasonable diligence because they had a right under Foxfield Villa's operating agreement to inspect the limited liability company's financial records and other documents.

After the district court denied the Plaintiffs' motion to alter or amend on June 30, 2023, the Plaintiffs filed a timely notice of appeal.

ANALYSIS

On appeal, the Plaintiffs contend that the district court erred in granting summary judgment in favor of the Defendants on the grounds that the causes of action asserted are barred by the statute of limitations. They argue that whether any or all of their causes of

9

action are barred by the statute of limitations is a question of fact. In particular, the Plaintiffs assert that there is a genuine issue of material fact regarding the question of when an actionable injury became reasonably ascertainable to them in order to trigger the statute of limitations. In response, the Defendants contend that the district court properly granted them judgment as a matter of law based on the statute of limitations based on the uncontroverted evidence in the record.

Our standard of review of a district court's order granting summary judgment is de novo:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo. [Citation omitted.]" *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

Likewise, "'[t]he interpretation and application of a statute of limitations is a question of law over which an appellate court exercises unlimited review. [Citation omitted.]'" *Mashaney v. Board of Indigents' Defense Services*, 302 Kan. 625, 630, 355 P.3d 667 (2015). Furthermore, the interpretation of Kansas statutes is a question of law over which our review is unlimited. *In re Wrongful Conviction of Bell*, 317 Kan. 334, 337, 529 P.3d 153 (2023).

Here, it is undisputed that the Plaintiffs seek to recover damages starting on March 24, 2008, which is the date on which Foxfield Villa executed the loan with the Bank. But the parties vehemently disagree about when an actionable injury became reasonably ascertainable to the Plaintiffs, and the district court did not determine a specific date on which it found the statute of limitations was triggered. In their briefs—and again during oral arguments—the parties presented a variety of dates on which they contend the statute of limitations "might" have been triggered.

The Kansas Supreme Court has held there are "two inquiries relevant to determining when the statute of limitations . . . began to run: (1) When did the [plaintiffs] suffer an actionable injury—i.e., when were all the elements of the cause of action in place? and (2) When did the existence of that injury become reasonably ascertainable to them?" *LCL v. Falen*, 308 Kan. 573, 583, 422 P.3d 1166 (2018). Although in some cases it is appropriate to grant summary judgment on the grounds that a cause of action is barred by the statute of limitations, these questions normally involve a question of fact and summary judgment is not appropriate. See *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 311, 820 P.2d 390 (1991). In other words, if there is a legitimate factual dispute about when an actionable injury became reasonably ascertainable, the question should not be decided on summary judgment but should be left to the jury or other finder of fact. See *Osterhaus v. Toth*, 291 Kan. 759, 788, 249 P.3d 888 (2011); see also *Bryson v. Wichita State University*, 19 Kan. App. 2d 1104, 1108, 880 P.2d 800 (1994) ("'[W]here the evidence is in dispute as to when a substantial injury first appears or when it becomes reasonably ascertainable, the issue is for determination by the trier of fact. [Citation omitted.]'").

The parties agree that 14 of the Plaintiffs' causes of action are governed by the two-year statute of limitations found in K.S.A. 60-513(a). Under K.S.A. 60-513(b), the statute of limitations only begins to run once a "substantial injury" becomes "reasonably ascertainable" to the party asserting the cause of action. Moreover, our Supreme Court

11

has defined "substantial injury" to mean an "actionable injury." *LCL*, 308 Kan. at 582. Likewise, our Supreme Court has defined "reasonably ascertainable" to mean that the party asserting the cause of action has an obligation to reasonably investigate both the injury and causation. *Davidson v. Denning,* 259 Kan. 659, 678-79, 914 P.2d 936 (1996). We note that the remaining cause of action asserted by the Plaintiffs is for an alleged violation of the Kansas Uniform Securities Act and it is also governed by a two-year statute of limitations—"after discovery of the facts constituting the violation"—as set forth in K.S.A. 17-12a509(j)(2).

As this court has held, "fraud and fraudulent concealment can toll a statute of limitations." *Foxfield Villa Assocs.*, 57 Kan. App. 2d at 130. This occurs where the concealment is "'intentional and, in the absence of a fiduciary or confidential relationship, there [is] something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action. [Citation omitted.]'" 57 Kan. App. 2d at 130. Also, in determining when the statute of limitations is triggered or tolled, it is objective knowledge of the actionable injury—and not simply the subjective knowledge of the party asserting the claim—that triggers the statute of limitations. See *P.W.P. v. L.S.*, 266 Kan. 417, 425, 969 P.2d 896 (1998).

In *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 378 P.3d 1090 (2016), the Kansas Supreme Court examined the issue of when it is appropriate to grant summary judgment on the grounds that a cause of action is barred by the statute of limitations. In *Armstrong*, which involved the mining of limestone under the plaintiffs' property, the court found that an actionable injury was not reasonably ascertainable to the plaintiffs "without more" than simply knowing that a mining company was working nearby. 305 Kan. at 28. In *Armstrong*, the "something more" was the shaking of the plaintiffs' house which led them to believe it was caused by "blasting somewhere on the property and the suspicions of unauthorized mining . . . ." 305 Kan. at 28.

Even so, our Supreme Court explained that the shaking of the house merely "triggered an obligation to investigate" and did not necessarily mean that an actionable injury was reasonably ascertainable to trigger the statute of limitations. 305 Kan. at 29. The *Armstrong* court concluded that it could not determine from the record on appeal what "avenues of investigation would have been 'reasonable,' nor whether these avenues 'contained the facts' . . . [or] would have revealed the trespass and conversion." 305 Kan. at 29. Consequently, our Supreme Court held that the district court erred in granting summary judgment because there was a genuine issue of material fact related to when an actionable injury was reasonably ascertainable, and it remanded the case to the district court so that the finder of fact could answer this question. 305 Kan. at 32.

Recently, in *Murray v. Miracorp, Inc.*, 318 Kan. 615, 545 P.3d 1009 (2024), our Supreme Court once again considered the issue of when an actionable injury becomes reasonably ascertainable in order to trigger the statute of limitations. In *Murray*, the Kansas Supreme court held that—based on the uncontroverted facts in the record on appeal—it was appropriate for the district court to grant summary judgment based on the statute of limitations in favor of a corporation, its president, a trucking company, and another defendant in an action brought by shareholders. 318 Kan. at 615-16. Still, our Supreme Court reiterated its prior holdings relating to the granting of summary judgment on the grounds that a claim is barred by the statute of limitations, including that "something more" is required to trigger the duty to investigate. 318 Kan. at 624.

The *Murray* court found it to be significant that although the plaintiffs did not file their lawsuit until October 25, 2016, they were aware of an actionable injury sometime in 2011. At that time, the plaintiffs knew that "Garmin was using Miracorp's name and logo" and they admitted that this caused them to be "'curious of the value of'" Miracorp stock. 318 Kan. at 617. As a result, the plaintiffs had their attorney send a letter to Miracorp's president dated July 22, 2011, complaining that "'no [shareholder] meetings

13

have ever been held,'" that "'no distributions have been made,'" and that "'Garmin [is] using Miracorp's name and logo.'" 318 Kan. at 617.

Although neither the corporation's president nor anyone else responded to the letter, the plaintiffs in *Murray* took little if any action to investigate their suspicions. 318 Kan. at 617, 626. Furthermore, our Supreme Court went on to find that "even if all their injuries were not reasonably ascertainable in July 2011—when their knowledge of Garmin using Miracorp's logo first aroused their suspicions—they would have been, at the latest, by the time they received the 2012 K-1 statement at the end of August 2013." 318 Kan. at 627. As the court explained, "[t]he point is that the [plaintiffs] did nothing besides possibly—accepting for the sake of argument—[an] attempt to speak with [the corporation's president] in 2012 . . . ." 318 Kan. at 628. Consequently, the *Murray* court concluded that "[w]hatever the [plaintiffs] should have done to investigate their suspicions, their failure to do anything until October 2016 renders the ultimate lawsuit untimely." 318 Kan. at 628.

We pause to note that we do not find the related case of *Foxfield Villa Assocs. v. Robben*, 57 Kan. App. 2d 122, to be dispositive of the issue presented here. In that case, the Plaintiffs filed a petition against Robben's wife—who was a realtor and allegedly had some involvement in the Foxfield Project—on August 31, 2016. In affirming the district court's granting of summary judgment in that case, the panel found it to be significant that the filing of the initial lawsuit against the Bank was on September 1, 2011. Of course, this was nearly five years before the lawsuit was filed against Robben's wife. 57 Kan. App. 2d at 128. Here, even if we were to assume that September 1, 2011, triggered the statute of limitations as to the causes of action asserted in this case against Robben and RDC Holdings, this action would have been timely filed on March 8, 2013.

Similarly, we do not find the United States District Court for the Tenth Circuit's opinion in *Foxfield Villa Associates, LLC v. Robben*, 967 F.3d 1082, to be instructive on

14

the issue presented in this appeal. As the Tenth Circuit made clear, the sole issue before it was whether the Plaintiffs' interests were "securities" and did not involve the statute of limitations. 967 F.3d at 1102. The Tenth Circuit explained:

> "The district court granted summary judgment to Mr. Robben and RDC on the sole ground that Plaintiffs' interests in Foxfield were not securities under the 1934 Act. Because that narrow inquiry—rather than whether Mr. Robben and RDC's conduct was fraudulent—is the lone issue on appeal, we discuss only the factual background and circumstances that influence whether Plaintiffs' interests fall under the 1934 Act's definition of 'security.'" 967 F.3d at 1087.

Based on our review of the record on appeal, we find that the Plaintiffs came forward with sufficient evidence in response to the Defendants' summary judgment motion to establish a genuine question of material fact as to when an actionable injury caused by the Defendants became reasonably ascertainable to them. Unlike *Murray*, we do not know whether the Plaintiffs could have discovered any or all of the alleged fraudulent misrepresentations made by Robben to induce them to become investors in the Foxfield Project simply by looking at the financial records of Foxfield Villa. Similarly, we do not know what weight a finder of fact may give to Robben's reassurance to Bartlett that his investment was not "at risk" when he did inquire about the stability of the Foxfield Project.

Rather, we find this case to be closer to *Armstrong* in that we cannot determine from the record on appeal what avenues of investigation would have been reasonable for the Plaintiffs to undertake in order to ascertain the existence of an actionable injury caused by the Defendants. It is also impossible for us to determine from the record what these avenues of investigation would have revealed regarding the cause or causes of action that could have been asserted or when they could have first been asserted. This is particularly true because we must resolve all facts and reasonable inferences from those facts in favor of the Plaintiffs.

15

Viewing the facts in the light most favorable to the Plaintiffs, a reasonable finder of fact might determine that the triggering event was on June 10, 2011, when Foxfield Villa defaulted on its loan from the Bank. Likewise, a reasonable finder of fact might determine that the triggering event was on September 1, 2011, when the Plaintiffs filed their initial lawsuit against the Bank. Further, a reasonable finder of fact might determine that the triggering event occurred at a later date when the Bank produced documents relating to their interactions with the Defendants. If any of these dates are determined by the finder of fact to be the triggering event, then some or all of the Plaintiffs' causes of action would not be barred by the statute of limitations.

Of course, we recognize that it is also possible that a reasonable finder of fact might agree with the Defendants that the triggering event occurred on March 24, 2008, when the loan from the Bank was executed. In the alternative, the finder of fact might find one of the alternative dates in 2008 or 2009 suggested by the Defendants to be the triggering event. If any of these dates are determined by the finder of fact to be the triggering event, then some or all of the Plaintiffs' causes of this action would be barred by the statute of limitations. Thus, because we find that reasonable minds could draw different conclusions from the evidence, summary judgment is inappropriate under the circumstances presented in this case. See *GFTLenexa, LLC*, 310 Kan. at 982.

CONCLUSION

In summary, we find that the questions of when the Plaintiffs suffered an actionable injury or injuries and when the existence of an actionable injury or injuries became reasonably ascertainable to them should appropriately be decided by the finder of fact. Although it is possible that some or all of the Plaintiffs' causes of action might be found to be barred by the applicable statute of limitations, we conclude based on our review of the record on appeal that there are genuine disputes of material fact that preclude the entry of summary judgment. Accordingly, we reverse the district court's

order granting summary judgment for the Defendants and remand this case to the district court for further proceedings.

Reversed and remanded with directions.